## STATE v. BANCROFT.

### (137 N. W. 37.)

**Indictment and information — rape.**

1. Under an information which charges that the defendant "did commit the crime of rape in the first degre as follows, to wit: That at said time and place said defendant, A, in and upon B, violently and·feloniously did make an assault, and her, the said defendant, then and there violently, by force, overcoming her resistance and against her will, feloniously did ravish and carnally know, and did then and there have sexual intercourse, and she, the said B, did then and there make resistance against the aforesaid acts of said defendant and said resistance was by the defendant overcome by force, she, the said B, being then and there a female, and not then and there the wife of said defendant," a verdict of guilty of rape in the second degree, or of assault with the intent to commit rape, may be returned; and such an information will sustain such a verdict even though § 8890 of the Codes of 1905 classifies the various ways in which the crime may be committed, and provides that rape in the first degree exists where the female "resists, but her resistance is overcome by force or violence," and that the crime of rape in the second degree exists where "she is prevented from resisting by threats of immediate and great bodily harm accompanied by apparent power of execution."

**Rape — threats.**

2. In such a case the threats may be physical as well as verbal, and may be prior to, as well as at the time of, the consummated act.

---

Note.—On the question of the effect and of the necessity of resistance, see notes in 36 Am. Rep. 860 and 80 Am. Dec. 364.

Rape — resistance of female.

3. The nature and amount of the resistance which must be made by the female in the case of rape is dependent upon the circumstances of the case, and on the possibility of success.

Opinion filed June 18, 1912.

Appeal from the District Court of Stark county; *W. C. Crawford*, J.

Defendant was convicted of the crime of rape in the second degree, and appeals.

Affirmed.

Defendant was convicted of the crime of rape in the second degree. The information charged that the defendant "did commit the crime of rape in the first degree, committed as follows, to wit: That at said time and place the said defendant, Leroy H. Bancroft, in and upon Maude Paddock, violently and feloniously did make an assault, and he, the said defendant, then and there, violently by force overcoming her resistance and against her will, feloniously did ravish and carnally know, and did then and there have sexual intercourse, and she, the said Maude Paddock, did then and there make resistance against the aforesaid acts of said defendant, and said resistance was by the defendant overcome by force, she, the said Maude Paddock being then and there a female, and not then and there the wife of said defendant. The jury returned a verdict of "guilty of rape in the second degree," and this appeal is taken from an order of the court denying a motion for a new trial.

*Alfred Zuger*, Assistant Attorney General, and *T. F. Murtha*, of Dickinson, for the State.

*H. C. Berry*, of Dickinson, for appellant.

BRUCE, J.: (after stating the facts as above). The principal contention of appellant is that under the information and the evidence, but two forms of verdict should have been submitted to the jury; namely "guilty of rape in the first degree," and "not guilty." He contends that under an information charging the accomplishment of rape in the first degree, by force alone, rape in the second degree, accomplished

"by threats of immediate and great bodily harm, accompanied by apparent power of execution," cannot be proved, or a conviction thereof be sustained. He calls attention to our statute, which is as follows, § 8890: "Rape is an act of sexual intercourse accomplished with a female, not the wife of the perpetrator, under either of the following circumstances: (1) When the female is under the age of eighteen years; (2) when she is incapable, through lunacy or any other unsoundness of mind, whether temporary or permanent, of giving legal consent; when she resists, but her resistance is overcome by force or violence; (4) when she is prevented from resisting by threats of immediate and great bodily harm, accompanied by apparent power of execution; (5) when she is prevented from resisting by an intoxicating, narcotic, or anesthetic agent, administered by or with the privity of the accused; (6) when she is at the time unconscious of the nature of the act, and this is known to the accused; (7) when she submits under the belief that the person committing the act is her husband, and this belief is induced by artifice, pretense, or concealment practised by the accused with intent to induce such belief." § 8893: "Rape committed upon a female under the age of eighteen years, or incapable through lunacy or any other unsoundness of mind, of giving legal consent, or accomplished by means of force overcoming her resistance, is rape in the first degree." § 8894: "In all other cases, rape is of the second degree." He maintains that each of the paragraphs of § 8890 defines a specific offense, and that in order that one may be found guilty of the crime of rape, the indictment or information must come within the terms of one of them, and must specifically set forth the constituent elements. He claims that one who is charged with the commission of rape by force overcoming resistance, which is rape in the first degree, cannot be found guilty of rape accomplished by threats of immediate and great bodily harm accompanied by apparent power of execution, which is rape in the second degree. Defendant also complains because the court, in its charge to the jury, intimated that if the facts warranted it, they could return a verdict for assault with intent to commit rape.

The contention of the state, on the other hand, is that under the information a verdict of either first or second degree rape, or assault with intent to commit rape, is permissible, and lays much stress upon § 8892 of the Code, which provides that "the essential guilt of rape con-

sists in the outrage to the person and feelings of the female. Any sexual penetration, however, slight, is sufficient to complete the crime." Also, upon § 9501, which provides that "an act done with intent to commit a crime, and tending but failing to effect its commission, is an attempt to commit that crime. Any person may be convicted of an attempt to commit a crime, although it appears on the trial that the crime intended or attempted was perpetuated by such person in pursuance of such attempt, unless the court, in its discretion, discharges the jury and directs such person to be prosecuted for such crime."

We believe that no error was committed in these matters, and that the contention of the state is correct. We are aware that there are cases to the contrary, noticeably State v. Vorey, 41 Minn. 134, 43 N. W. 324; Williams v. State, 1 Tex. App. 90, 28 Am. Rep. 399. We are also aware of the fact that there are some words used by way of *dicta* in the opinion of this court in the case of State v. Rhoades, 17 N. D. 580, 118 N. W. 233, which would seem to express a view which is contrary to that herein contained. The former cases, however, do not seem to be in accord with the general weight of authority, or with the logic of our statutes; and in the North Dakota case mentioned, the question was not thoroughly considered, nor was it necessary that it should have been. We have, indeed, to choose between the construction put upon statutes such as ours by the Minnesota court in the case of State v. Vorey, 41 Minn. 134, 43 N. W. 324, and the Texas court in Williams v. State, 1 Tex. App. 90, 28 Am. Rep. 399, and that of the California court in the case of People v. Snyder, 75 Cal. 325, 17 Pac. 208, and People v. Vann, 129 Cal. 119, 61 Pac. 776. We prefer to follow the rule laid down by this latter court, both because it appears logical and sensible, and because it is in accord with the general growth and history of the common law in relation to rape. "This contention," the California court said, "is that while the information charges the crime to have been committed by force, violence, etc., the proof shows that it was committed . . . by means of an an intoxicating or narcotic substance administered to the prosecuting witness by the accused, and that under § 261 of the Penal Code an information charging the crime to have been committed by force cannot be supported by proof showing it to have been committed by fraud or artifice. The common-law definition of rape was 'the carnal knowledge of a wom-

an forcibly and against her will;' . . . and the indictment was substantially in the form of the information in the case at bar, and through decisions made from time to time it gradually came to be the settled law (although there are cases to the contrary) that under such an indictment it was competent and sufficient to prove that the act charged was committed upon a child of tender years incapable of consent; upon a lunatic or insane woman; by intimidation; when the woman was unconscious of the nature of the act; by the administration of intoxicating or narcotic substances; by false personation of a husband, etc. The criminal law of this state followed the common-law definition of the crime down to the adoption of the Codes. Hittel's Gen. Laws, § 449. Sec. 261 of the Penal Code commences as follows: 'Rape is an act of sexual intercourse accomplished with a female, not the wife of the perpetrator, under either of the following circuumstances.' Then follows six subdivisions, which recite substantially the things which (as above briefly indicated) could be proven under the general common-law indictment, and the position taken by appellant really is that the indictment and the proof must follow and be confined to one of the six subdivisions of the section. We think the true construction of § 261 to be that thereby the legislature meant merely to put beyond doubt the rule that on information for rape the things mentioned in the subdivisions could be proven and would establish the crime. It is not intended to allow, or establish a rule of pleading, or to create six different kinds of crime. Now, as before the adoption of the Code, under an indictment similar to the information in this case, any of the matters mentioned in § 261 may be proved. They are included in the words, 'by force and violence and against her will,' and 'did feloniously ravish,' as fully now as they were then." See also Don Moran v. People, 25 Mich. 356, 12 Am. Rep. 283, 10 Enc. Ev. p. 581.

We believe that it would have been better practice to have charged the several specific methods of accomplishing the crime in the manner in which they are specified in the statute and under the subdivisions of the statutes; and that, if such had been done, no objection could have been made on the ground of duplicity, as the facts then charged would have constituted but a single offense, and have been but component parts or preliminary stages of committing the same offense. See 33

Cyc. pp. 1450, 1451, and cases cited. We do not, however, hold that such particularity was necessary.

It also seems quite clear to us, from the authorities and from our statutes, that one charged with the commission of rape can be found guilty of assault with intent to commit rape. Nor do we see that any prejudice occurred from the refusal of the court to allow the witness to answer the question, "You were going to give him another chance?" and, "Everything was all squared between you at that time?" The witness had testified fully as to the facts, and the jury was fully competent to form its conclusions therefrom. These questions were asked for the purpose of showing that the woman had come to believe that, after the pursuit of her over the prairie, and the indecencies committed in the earlier part of their ride, that the defendant would desist from further persecution. The facts of the case answer the questions in the affirmative, and it was unnecessary for the witness to go further. In fact, she, at a later period of the testimony, testified that she thought the defendant was going to be civil to her, and had practically answered the questions. Nor do we believe that any prejudicial error was occasioned by refusing to allow the complaining witness to answer the question, "Did you call Dr. Tweedle to testify in this case?" The fact was that the doctor was not present, and the only inference that the jury could possibly draw would be that he was not called, and the circumstances of the trial answered the question for the defendant as strongly and advantageously as any verbal answer could have done.

Nor do we believe that there was any error in the charge of the court that "you are not at liberty to disbelieve as jurors, if, from the evidence, you do believe as men. Your oath imposes on you no obligation to doubt where no doubt would exist if no oath had been administered." It is claimed that this instruction allows the jury to base their belief on facts outside of the evidence, but this is not true. Appellant does not, in his brief, give the whole instruction. The whole instruction is as follows: "The jury should confine themselves to the evidence before them, and are not allowed to create sources or materials of doubt by resorting to trivial and fanciful suppositions and remote conjectures as to possible states of fact differing from that established by the evidence, nor can they go beyond the evidence to seek for doubts. You are not at liberty to disbelieve as jurors, if, from the evidence, you

do believe as men. Your oath imposes on you no obligation to doubt where no doubt would exist if no oath had been administered." Again, the court said: "If you are satisfied beyond a reasonable doubt, from the evidence, that the defendant took hold of said Maude Paddock," etc.

Nor do we believe that any error was committed by the court in instructing the jury as to the crime of assault with intent to commit rape. It is well established, as before said, that this crime can be proved under the charge of rape, and need not be specifically alleged. The evidence is perfectly clear and uncontroverted that during the course of the ride the defendant committed numerous indecent assaults upon the prosecuting witness, and it was not improper for the court to leave it to the jury to infer the intention.

We now come to the main question, and that is as to whether there was sufficient evidence in the record on which to support the verdict, and which would justify the conviction. We believe that there was. It is not for us to pass upon the credibility of the witnesses, and as far as this appeal is concerned we can take the testimony of the complaining witness alone. Her testimony conclusively proves that during the course of the ride there were numerous indecent assaults; that she was chased over the prairie; that at one time the defendant threatened to shoot her; that there was a continuous course of persecution and solicitation, accompanied both by pursuit and indecent handling; that she was completely exhausted, and that when at the river the defendant threw her down. As before stated, we believe that the information warrants a verdict for rape in the second degree accomplished by threats of great bodily harm, and that force itself can be proved by proof merely of threats and of fear. The persecution was continuous, and, earlier in the transaction there was proof, if we believe the prosecuting witness, of a verbal threat, and all of the circumstances of the case would justify one in assuming physical threats and the overcoming of resistance both by force and fear. We are not, indeed, willing to take the position that a woman, no matter how indiscreet she may have been in the first instance in riding into the country with a man who is more or less a stranger to her, must, when assaulted in a lonely place and miles from any chance for succor or aid and when outcries would have been unavailing, and when she is at the mercy of her assailant even as

to the opportunity of returning home, fight to the uttermost in order to protect her honor, before her assailant, whose every act is reprehensible, can be convicted of the crime of rape. As to how far the resistance should go depends entirely upon the circumstances and the possibility that it may, in any way, be effective. To hold, indeed, that a woman under such circumstances must fight as a man, at the risk of personal injury and laceration, is too opposed to common decency and common sense to merit our consideration in any manner. So, too, we do not believe that, in order to show that one's resistance has been overcome by threats of great bodily harm, it is necessary to show that the threats were made verbally, or immediately before or at the time of the commission of the act of intercourse. Sharp v. State, 15 Tex. App. 171. Nor, too, are we prepared to argue an acquiescence from the fact that while driving home with the defendant, which it seems the complaining witness had no option but to do, that she did not proclaim her disgrace to every casual passer-by, but that it is sufficient that she made it known immediately upon reaching the town of Dickinson. Such holdings, indeed, are responsible for and merely lead to lynch law, and no one who really respects woman would require her to submit to any such humiliation. It is true that rape is easy to charge, and that sometimes a defendant is convicted when not technically guilty, but this does not justify us in stretching probability in order to create a defense. There is one way to escape danger, and that is for men to refrain from the lechery and indecencies which this defendant himself freely admits having committed. There is, indeed, in his testimony, no pretense of seduction on the part of the woman, and no evidence whatever of any solicitation or consent, except that which may, possibly, have occurred at the time of the act, when she was worn out by his frequent assaults and pursuits, was far from any person or from any habitation, and was completely at his mercy. The jury evidently believed the testimony of the complaining witness, and the trial judge who heard the evidence evidently concurred with them in their belief. We do not feel justified in setting aside the verdict.

The judgment of the District Court is affirmed.