[File No. Cr. 204]

STATE OF NORTH DAKOTA, Respondent, v. EARL NAGEL, Appellant.

(28 NW2d 665)

496

498

Opinion filed August 14, 1947

*Murray & Murray*, for appellant.

*Nels G. Johnson*, Attorney General, and *George S. Register*, States Attorney, for respondent.

500

NUESSLE, J. The defendant, Earl Nagel, was convicted in the District Court of Burleigh County of the crime of rape in the third degree. The information on which he was tried charged that the defendant did commit the crime of rape in the second degree in the manner following towit: "That at the said time and place the said defendant did then and there wilfully and unlawfully and feloniously have an act of sexual intercourse accomplished with a female (naming the complaining witness) not the wife of said defendant, under the following conditions: that said female did then and there resist, but her resistance was overcome by force or violence; that said female was then and there under the age of eighteen years and of the age of sixteen years, or thereabouts; that at said time the said defendant was more than seventeen years of age and under twenty years of age." The jury returned a verdict of guilty of rape in the third degree. Thereafter the defendant moved in arrest of judgment and later for a new trial. Both these motions were denied. Judgment was entered committing the defendant to the state training school. This appeal is from the judgment and from the court's order denying the defendant's motion for a new trial.

In support of this appeal the defendant challenges the sufficiency of the evidence to sustain the verdict and specifies a large number of errors of law predicated on the rulings on the motions above set forth and on other rulings made by the court prior to and during the trial, and on certain of the instructions given by the court in his charge to the jury.

The alleged offense was committed in the early morning hours of July 10, 1945. The complainant, as soon as it was possible for her to do so, went to the police officers of the city of Bismarck and made complaint. The defendant was arrested and held for examination. Thereafter a formal complaint was made charging him with the crime of rape in the second degree. A preliminary hearing was had. Evidence was offered tending to show

the defendant had committed the crime of rape by force and violence, and that at the time of the commission thereof he was nineteen years of age. Accordingly, he was bound over to the district court on a charge of rape in the second degree.

In due course the state's attorney filed an information in the district court charging rape in the second degree by force and violence. The defendant was arraigned thereon and entered a plea of not guilty. Before the trial began the state's attorney learned that the complaining witness, at the time of the commission of the offense, was under the age of eighteen years. He then moved the court for leave to file an amended information in which that fact was alleged. The defendant objected on the ground that the proposed amended information was duplicitous, in that it charged both a rape by force, and a statutory rape of a female under the age of consent, and on the further ground that he had never had a preliminary hearing on the charge of statutory rape. The objection was overruled and an amended information was filed in the form first heretofore set forth. The defendant was then re-arraigned. He thereupon filed a written motion to set aside the amended information on the grounds that it was duplicitous in that it charged two offenses, towit: rape in the second degree by force and violence, and rape in the third degree of a female under the age of eighteen years, and on the further ground that he had never had a preliminary examination on the charge of statutory rape. The motion was denied. Defendant next filed a written demurrer on the grounds that the information was duplicitous, in that it charged both rape by force and violence and statutory rape, and that it did not state facts sufficient to constitute the latter offense. The demurrer was overruled. Thereupon the defendant entered a plea of not guilty. He then moved for a continuance. This motion was also denied and the case proceeded to trial. The jury returned a verdict of guilty of rape in the third degree. After the verdict was returned defendant moved in arrest of judgment on the several grounds that he had urged in support of his motion to set the amended information aside,

and in support of his demurrer thereto. This motion in arrest also was denied.

The court was right in denying the several motions thus challenging the propriety and sufficiency of the amended information. This is apparent upon examination of the statutes defining the crime of rape and the several degrees of that offense. The statute, § 12–3001, ND Rev Code, provides:

"Rape is an act of sexual intercourse accomplished with a female not the wife of the perpetrator, under any of the following circumstances:

1. When the female is under the age of eighteen years;

2. When she is incapable through lunacy or other unsoundness of mind, whether temporary or permanent, of giving legal consent;

3. When she resists but her resistance is overcome by force or violence;

4. When she is prevented from resisting by threats of immediate and great bodily harm, accompanied by apparent power of execution;

5. When she is prevented from resisting by an intoxicating, narcotic, or anesthetic agent administered by or with the privity of the accused;

6. When she, at the time, is unconscious of the nature of the act, and this is known to the accused; or

7. When she submits under the belief that the person committing the act is her husband, and this belief is induced by artifice, pretense, or concealment practiced by the accused with intent to induce such belief."

"Rape is rape in the first degree:

1. In all cases in which the person committing the offense is twenty-four years of age or over at the time of the commission of the offense;

2. In all cases in which the offense is committed under any of the conditions described in subsections 2, 3, 4, 5, 6, and 7 of section 12–3001 and in which the person committing the offense is twenty years of age or over at the time of the commission of the offense." Section 12–3004, ND Rev Code 1943.

"Rape is rape in the second degree:

1. In all cases in which the offense is committed under any of the conditions described in subsections 2, 3, 4, 5, 6, and 7 of section 12–3001, and in which the person committing the offense is seventeen years of age and under twenty years of age at the time of the commission of the offense.

2. In all cases in which the offense is committed under the conditions described in subsection 1 of section 12–3001, and in which the person committing the offense has reached twenty years of age and is under twenty-four years of age at the time of the commission of the offense." Section 12–3006, ND Rev Code 1943.

and "rape is rape in the third degree:

1. If committed by a person under twenty years of age at the time of the commission of the act and with the apparent consent of a female under the age of eighteen years; or

2. If committed by a person under seventeen years of age at the time of the commission of the act under any of the conditions described in subsections 2, 3, 4, 5, 6, and 7 of section 12–3001." Section 12–3008, ND Rev Code 1943.

The defendant grounds his challenge of the propriety and sufficiency of the amended information on the theory that the several ways in which the offense may be committed and the several degrees of the offense that may be found, depending upon the facts and circumstances attendant on its commission, constitute separate and distinct offenses and must be charged as such. We think that this theory is wholly unsound as is evidenced by the authorities in this state and in other states having similar statutory provisions.

It is to be noted here that the defendant's challenges (by motion to set aside and by demurrer) of the information interposed prior to the entering of his plea of not guilty are not authorized by the statute. See § 29–1403, ND Rev Code 1943. However, for the purposes of this case we will consider them as in effect motions to quash, the method provided by the statute, § 29–1404, ND Rev Code 1943.

The statute, § 12–3001, supra, defines the crime of rape. Sec-

tions 12–3004, 12–3006, and 12–3008, simply determine the degrees of rape depending upon the facts and circumstances attendant upon its commission. Both the offense defined in § 12–3006, and that defined in § 12–3008, are included offenses, included within the crime of rape in the first degree as defined in § 12–3004, and are differentiated only by reason of the ages of the parties thereto. Logically, the offense (rape in the third degree) defined in subsection 1 of § 12–3008, is included within the offense (rape in the second degree) defined in subsection 1 of § 12–3006. See State v. Bancroft, 23 ND 442, 137 NW 37; State v. Running, 53 ND 896, 208 NW 231, and State v. Murbach, 55 ND 846, 215 NW 552. In State v. Bancroft, 23 ND 442, 137 NW 37, supra, this court quoted with approval from the case of People v. Snyder, 75 Cal 323, 17 P 208. The statute of California defining the crime of rape was very like our § 12–3001, and in that case the defendant was charged with rape by force and violence. The proofs showed a rape by means of intoxicating or narcotic substance administered to the prosecuting witness by the accused. The contention was made that an information, charging the crime to have been committed by force, could not be supported by proofs showing it to have been committed by fraud or artifice. The judgment of conviction was sustained, the court saying (as quoted with approval in State v. Bancroft (ND) supra):

"This contention is that while the information charges the crime to have been committed by force, violence, etc., the proof shows that it was committed . . . by means of an intoxicating or narcotic substance, administered to the prosecuting witness by the accused, and that under section 261 of the Penal Code an information charging the crime to have been committed by force cannot be supported by proof showing it to have been committed by fraud or artifice. The common-law definition of rape was 'the carnal knowledge of a woman forcibly and against her will'; . . . and the indictment was substantially in the form of the information in the case at bar, and through decisions made from time to time it gradually came to be the settled law (although there are cases to the contrary) that under such

an indictment it was competent and sufficient to prove that the act charged was committed upon a child of tender years incapable of consent; upon a lunatic or insane woman; by intimidation; when the woman was unconscious of the nature of the act; by the administration of intoxicating or narcotic substances; by false personation of a husband, etc. The criminal law of this state followed the common-law definition of the crime down to the adoption of the Codes. Hittel's Gen Laws, par 449, sec 261 of the Penal Code commences as follows: 'Rape is an act of sexual intercourse accomplished with a female, not the wife of the perpetrator under either of the following circumstances:' Then follow six subdivisions which recite substantially the things which (as above briefly indicated) could be proven under the general common-law indictment and the position taken by the appellant really is that the indictment and the proof must follow and be confined to one of the six subdivisions of the section. We think the true construction of section 261 to be that thereby the legislature meant merely to put beyond doubt the rule that on information for rape the things mentioned in the subdivisions could be proven and would establish the crime. It is not intended to allow, or establish a rule of pleading, or to create six different kinds of crime. Now, as before the adoption of the Code, under an indictment similar to the information in this case, any one of the matters mentioned in section 261 may be proved. They are included in the words, 'by force and violence and against her will', and 'did feloniously ravish,' as fully now as they were then."

And our statute, § 29–2223, ND Rev Code 1943, provides that upon an information for any offense the jury may convict the defendant of any offense necessarily included within the offense charged. "The rule is that when the offense charged includes another or small constituent offense the charge of such other offense will not render the information double. . . . The statute authorizing the conviction of one accused of any offense necessarily included in that with which he is charged in the information is a legislative recognition of this rule." State

v. Climie, 12 ND 33, 94 NW 574; State v. Barnes, 29 ND 164, 150 NW 557, Ann Cas 1917C 762.

The defendant insists that the information does not state facts sufficient to constitute a charge of rape in the third degree committed with a female under the age of eighteen years with her apparent consent. His contention is that the failure of the information to state that the act was committed with *her apparent consent* is fatal; that the female in such case must consent in order to constitute the crime and, therefore, that fact must be charged. This contention stems from the basic theory of the defendant that the several degrees of rape constitute several and independent offenses. It follows from what we have said that the contention cannot be sustained. If the act is committed with a female under the age of consent by a male over the age of seventeen and under the age of twenty years, whether or not she willingly participates in the act, is immaterial except in determing the degree of the offense. The law having fixed the age of consent, under that age she cannot consent. Her willingness to participate constitutes only an apparent consent. "In such case the female is to be regarded as resisting no matter what the actual state of her mind may be at the time. The law resists for her." People v. Verdegreen, 106 Cal 211, 39 P 607, 46 Am St Rep 234. If she does resist and her resistance is overcome, the act is rape in the second degree. If she does not resist and willingly participates, then it is rape in the third degree. Thus rape in the third degree is included in the offense of rape in the second degree. Accordingly, if on the proofs made where the offense charged is rape in the second degree and it does not certainly appear the act was committed by overcoming the female's resistance by force and violence, the jury may return only a verdict of rape in the third degree. It follows that a failure to charge that the female consented is wholly immaterial insofar as the sufficiency of the information is concerned. And it likewise follows that there is no ground to complain in the instant case because there was no preliminary examination on the charge of rape in the third degree.

The defendant specifies error on the part of the court in deny-

ing his motion for continuance. This motion was predicated on the following facts: At the preliminary examination the complaining witness testified she was eighteen years of age. It also appeared that she had not long been a resident of Burleigh County but was born and had lived all of her life prior to coming to Burleigh County in another county remote from Burleigh. The defendant when arraigned under the amended information contended he was surprised by reason of the fact that the charge against him was for rape upon a female under the age of eighteen years; that he wished to investigate in order to determine whether the complaining witness was in fact under age; that in order to do this it was necessary to go to the place of her former residence; that the complaining witness having testified under oath at the preliminary examination that she was over the age of eighteen, there was no need for an investigation prior to the time of the arraignment. The State did not resist a reasonable continuance, but objected to the case going over the term. Counsel for the defendant stated it would require at least two weeks in order to make the investigation. He made no further showing for asking for such time. The court stated he would grant a reasonable time but not the length of time requested by the defendant. Counsel for the defendant then advised the court it would be futile for him to attempt to make the proposed investigation within the time allowed by the court. Thereupon the court overruled his motion. The matter of the length of any continuance that might be granted was largely within the discretion of the court and there was no such showing on the part of the defendant as will warrant us in saying there was an abuse of this discretion.

The defendant challenges the validity of § 12–3008. He contends that this statute defines a new and independent offense; that it was never enacted except as a part of the North Dakota Revised Code of 1943; that that code was never enacted by the legislature and in fact is merely a compilation of the statutes; that therefore § 12–3008 is unconstitutional as not conforming to the requirements of § 61 of the North Dakota Constitution,

which requires that the subject of an act shall be expressed in its title.

There is no merit to this contention. In the first place, § 12–3008 is not a new enactment. It was enacted as chapter 193, Session Laws 1917, and appears as § 9567, 1925 Supplement. Furthermore, there is no basis for defendant's theory that the Revised Code of 1943 was not enacted by the legislative assembly. This theory is that Senate Bill 40, printed as chapter 267, Session Laws 1945, and entitled "An Act for the adoption of the North Dakota Revised Code of 1943, consisting of sixty-five titles, including an integration of the 1943 Session Laws, as a complete body of laws, repealing all laws not specifically excepted, and declaring an emergency" is defective in that section 1 of that act is blank and so appears in the bound volumes of the Session Laws for 1944–1945.

It is true that § 1 of chapter 267, Session Laws of 1945, the act adopting the Code of 1943, with the integrated 1943 Session Laws, appears in the printed volumes of the 1945 laws as the defendant contends it does. But the Code of 1943 was adopted and enacted by the legislative assembly in 1943. See chapter 201, Session Laws 1943. And, at that same session, the legislative assembly also enacted chapter 189, which, among other things, authorized and directed the Code Revision Commission to incorporate the laws enacted at that session in the North Dakota Revised Code of 1943; to arrange, renumber, and correct typographical errors in such code; and to prepare the same for publication. Pursuant to this authorization and direction the commission did integrate the laws enacted at the 1943 session and caused the code with the laws thus integrated to be printed and published as Volumes 1, 2, 3, 4, and 5, of the North Dakota Revised Code of 1943. Senate Bill 40, introduced in the senate at the 1945 session of the legislative assembly, entitled as above set forth, had attached to it as a part thereof and constituting § 1 thereof, Volumes 1, 2, 3, 4, and 5 of the Revised Code of 1943. The enrolled bill in the office of the secretary of state, signed by the president and secretary of the senate and the speaker and

chief clerk of the house and approved by the governor, contains the following certificate:

"This is to certify that the laws contained in this bill consisting of the title, the enacting clause, Section 1 consisting of the North Dakota Revised Code of 1943 contained in five printed volumes, numbered 1 to 5 inclusive and entitled 'North Dakota Revised Code of 1943' containing 65 titles and including an integration of the 1943 session laws, as a complete body of laws and also containing Sections 2, 3, and 4, together with a list of amendments thereto which is certified by us, constitute the original enrolled body of Senate Bill No. 40, which originated in the Senate of the 29th Legislative Assembly in the state of North Dakota, as amended by the House and Senate."

There are also on file in the office of the secretary of state, Volumes 1, 2, 3, 4, 5, of the Revised Code of 1943, each certified by the president and secretary of the senate and the speaker and chief clerk of the house as being attached to and constituting a part of section 1 of Senate Bill 40, as passed by the senate and the house of the 1945 legislative assembly. The fact that these volumes were a part of and constituted section 1 of Senate Bill 40, is further evidenced by the records of both the senate and the house as shown by their respective journals, and particularly the record showing the action of a duly appointed conference committee in reporting and recommending amendments to the bill, and of both the house and the senate in adopting this report. See, pages 74 and 75 of the senate journal, and pages 127 and 128 of the journal of the house. These amendments appear in the printed volume of the session laws for 1944–1945, following chapter 267 thereof on pages 346 and 347. It is to be noted that in these amendments reference is made to "Section 1 of the bill, in volume 1 thereof." Thus it clearly appears that section 1 of Senate Bill 40 was intended to and it did consist of the five volumes of the Code of 1943 as the same were printed and bound. It is obvious that it was not practicable to write, typewrite, or print these five volumes, comprising more than four thousand printed pages as a part of Senate Bill 40, therefore, they were attached to and made a part of that bill. And

it is beyond question that in this form the bill was introduced; that in this form it was acted upon and adopted by both houses of the assembly; and in this form it was approved and signed by the governor. Thus all the requirements essential to the passage of a legislative act and its approval by the governor were complied with.

On his motion for a new trial and on this appeal the defendant specified as errors, in addition to those we have heretofore passed upon, numerous rulings of the court on matters of evidence which we will now consider. In order the better to do this it may be well to outline briefly the facts that the jury could reasonably find from the evidence introduced.

On the evening of July 9, 1945, Lois, the complaining witness, and four other girls, Irene, Edna, Frieda and Phyllis, all of whom lived in Bismarck, went across the Missouri River to a dance pavilion, situated two or three miles west of Bismarck. About one o'clock in the morning of the 10th, they were standing in front of the pavilion looking for a taxi or other conveyance to take them home. While they were there an automobile, driven by Ernie, stopped near them. With Ernie were five other boys: Gene, Dewey, Bob, Ray, and the defendant. Some of the girls knew some of the boys. In any event, the girls were invited to return to Bismarck with them. All got into the automobile which was driven east on the main highway toward Bismarck. Immediately after crossing the river the car turned north off the highway. One of the girls objected but the driver continued for some miles until finally they came to a secluded cabin in the woods along the river bottom. The car was parked close to the cabin. The boys got out, forcibly entered the cabin which was unoccupied, lit some candles they found there, and invited the girls in. The girls accepted this invitation. The cabin consisted of two rooms: a kitchen and sitting room with a so-called balcony over the kitchen, and a screened porch off the front of the living room. It was meagerly furnished. The living room contained a table, some kitchen chairs, and a sanitary couch used for a bed. On the porch was a heavy rough bench. After they had been in the cabin a few min-

utes the boys blew out the lights. Some of the young people left the cabin until finally there remained there Phyllis and Dewey on the porch and Lois and Gene and the defendant in the living room. Thereafter there was a considerable confusion and disturbance in the cabin. Phyllis was crying and screaming and calling for help and there was a great deal of noise on the porch where the bench apparently was being shoved about on the floor. In the living room Lois was struggling with Gene and the defendant. She screamed and shouted for help. None came. They tore her garments, took off her girdle and pants, broke her garters to pieces, and then took off her shoes and stockings. Finally the defendant had intercourse with her. Thereafter all of them left the cabin, got in the car and were driven back to Bismarck. Lois and Irene at once went to the police department and complained to the officers there that the boys had committed an assault upon Lois. The police went out and arrested the boys, who were still in the automobile driving about the streets. The arrests were made in the morning, a little before five o'clock. The boys were taken to the city jail and confined there until the afternoon, when they were questioned by the police officers and the state's attorney, and the defendant and the others made and signed written statements as to what had taken place. Later a formal complaint was made charging the defendant with rape. A preliminary examination was had on the 12th day of July, at which time he was bound over to the district court on a charge of rape in the second degree.

Defendant predicates error on the admission in evidence of State's Exhibit 1. In the course of the trial on December 11, 1945, the father of the complaining witness was called as a witness. He testified he had in his possession a certified copy of the birth certificate of the complaining witness, issued by the state registrar of vital statistics, that he had obtained "up at the capitol yesterday." He produced this instrument and it was marked as State's Exhibit 1. It purports to be a certified photocopy of the original record of birth of the complaining witness. It is certified as follows:

"I, Geo. F. Campagna, M.D., State Health Officer, and State Registrar, do hereby certify that the foregoing is a true and correct photocopy of the original record of birth, filed, kept and preserved in the office of the division of vital statistics, State Department of Health, Bismarck, North Dakota.

G. F. Campagna, State Health Officer
and Registrar."

The certificate is dated December 10, 1945. It bears the seal of the Health Department of the State of North Dakota, and is signed by Mabel Tramp, deputy state registrar. The certificate of birth, of which Exhibit 1 is certified to be a photocopy, was made pursuant to § 446, Comp Laws 1913, (see § 23–0212, ND Rev Code 1943) by the physician who was in attendance at the birth of the complaining witness. It sets forth the facts required to be stated therein by § 447, Comp Laws 1913. It bears date February 2, 1929. Pursuant to section 446, supra, it was filed February 5, 1929, with the local registrar of births and deaths Jesse M. Hunt. In this connection, see also, § 437, Comp Laws 1913. It was transmitted to the state registrar of births and filed in his office on the 11th day of March, 1929, as required by § 452, Comp Laws 1913. Thus it became a public record, made in the performance of an official duty prescribed by statute. The exhibit was an instrument which, on proper request, the registrar of vital statistics or his deputy was required to issue. Section 23–0226, ND Rev Code 1943. The trial court was authorized to take judicial notice of the genuineness of the signature of the official certifying to the same pursuant to subsections 42 and 89 of § 31–1002, ND Rev Code 1943. Accordingly, the exhibit was admissible pursuant to the provisions of § 23–0240, ND Rev Code 1943, and there was no error in receiving it in evidence over the objection that no proper foundation therefor had been laid. See State v. Kilmer, 31 ND 442, 153 NW 1089, Ann Cas 1917E 116.

The defendant most strenuously contends, however, that Exhibit 1 is not such a certificate as section 23–0240 contemplates. He insists that the only certificate which may be received in

514.

evidence pursuant to the provisions of that section is that which is prescribed by § 23–0225, ND Rev Code 1943. With this contention we cannot agree. Section 23–0240 provides: "The *registrar's certificate of the record of a birth* and a *certified copy of any birth . . . certificate,* issued by the state registrar of vital statistics, shall be prima facie evidence of the facts stated therein and shall be accepted as such proof by any court in this state." This section clearly contemplates that there may be two forms of certificate issued, both receivable in evidence, the one described in § 23–0225, and the other recognized in the last sentence of § 23–0226. This latter section provides, "No information other than the certificate of proof of birth described in this chapter shall be issued by the state registrar of vital statistics, except upon the request of the person in relation to the birth of whom the information is requested. Upon the request of the person described therein, or if such person is a minor, upon request of his legal parents or general guardian, the registrar may furnsh a certified copy of the birth certificate provided for by the statute." Clearly this last sentence has reference to the doctor's certificate required to be filed by section 446, supra, (§ 23–0212). Accordingly, pursuant to the provisions of § 23–0240, the registrar may issue his *certificate of the record of a birth* or he may issue a *certified copy of any birth certificate.* This is further evidenced by the provisions of § 23–0205, ND Rev Code 1943, providing that the registrar shall collect a fee of fifty cents for a certified copy of a birth certificate and a similar fee for a certificate of the record of a birth and is consistent with the provisions of §§ 23–0212 and 23–0213, providing for the certificate of birth to be issued by the attending physician and prescribing its contents, and with the provisions of §§ 23–0224 and 23–0225, providing for the certificate of the record of a birth. It is true that in the instant case the certificate of the state registrar describes the certificate of birth, the photocopy of which is certified as "the original record of birth". But the attending physician's certificate of birth is in fact the original record of the birth and an examination of the photocopy

makes clear that what was intended was the certification of the original certificate of birth.

The defendant also objected to the admission of the exhibit on the ground that it was hearsay; that the defendant had had no opportunity to cross-examine the maker of the certificate of birth and therefore the statute, § 23–0240, supra, providing for its admission, violated Article Six of the Amendments to the Constitution of the United States which, among other things, provides: "In all criminal prosecutions the accused shall enjoy the right to be confronted with the witnesses against him." As to this objection, it is enough to say we have held heretofore that the provisions of this Article have no application to trials in the state courts. See, State v. Tracy, 34 ND 498, 158 NW 1069. See also State v. Schmidt, 72 ND 719, 10 NW2d 868. And, in any event, we are of the opinion that this statute would not contravene the constitutional guarantee contained in the Sixth Amendment. See, Com. v. Slavski, 245 Mass 405, 140 NE 465, 29 ALR 281, and cases cited therein. See also 5 Wigmore, Evidence 3d ed §§ 1397, 1398, and cases cited in notes.

During the course of the trial, State's Exhibit 3 was offered in evidence after having been identified as a statement signed and sworn to by the defendant. In this statement he recited what was said and done at the cabin on the night in question and, among other things, stated he had had sexual intercourse there with the complaining witness Lois. It was objected to by the defendant on the ground that it was a confession and had been obtained in such a manner and under such circumstances as to render it involuntary and inadmissible.

No rule is better established than that in a criminal case a confession made by the defendant is inadmissible in evidence against him unless it was made voluntarily, that is, without compulsion or inducement of any sort fairly likely to produce an untrue statement. See State v. Kerns, 50 ND 927, 198 NW 698, and cases cited therein; Lisenba v. California, 314 US 219, 86 L ed 166, 62 S Ct 280; Wilson v. United States, 162 US 613, 40 L ed 1090, 16 S Ct 895. The aim of the rule that a confession is inadmissible unless it was voluntarily made is to exclude false

evidence. Lisenba v. California, 314 US 219, 86 L ed 166, 62 S Ct 280, supra; Wigmore, Evidence 3d ed §§ 823 et seq. As to whether a confession is voluntarily or involuntarily made is a matter to be determined in the first instance by the court. And where the evidence is conflicting, such determination by the court will not be disturbed on appeal unless manifestly against the weight of the evidence. State v. Kerns, 50 ND 927, 198 NW 698, supra. Accordingly, the court properly excused the jury in order that the question as to whether the confession was voluntary might be determined in their absence. The State then called witnesses who testified as to the circumstances under which it was made and signed. The defendant was present with his counsel. The witnesses thus called testified in effect as follows: The defendant was a high school graduate, nineteen years of age. In the afternoon of the day on which he was arrested he was brought to the office of the chief of police and interviewed by the state's attorney. Present were the state's attorney, the justice of the peace, the chief of police, and two deputy sheriffs. The state's attorney first told him he had the right to have a lawyer. That the state's attorney would like to have a statement from him as to the facts in the case if he were willing to make it but that he was under no obligation to make such a statement. That if he did make it, anything he might say would be used against him should the matter come to trial. The defendant was acquainted with the justice of the peace and the peace officers and knew one of the latter very well. No threats were made to him and no promises of any sort. Nor was there any show of force or violence. The defendant was not in any manner under restraint, except that he was in the presence and custody of the officers and had been confined in a cell in the city jail from the time of his arrest until brought into the office by the police. One of the deputies whom he knew well, told him if he made any statement he should make a truthful one but that he was under no compulsion to make it. Thereafter the defendant made his statement. The state's attorney then asked him to repeat it a few words at a time so he might take it down on the typewriter. After it was thus taken down he read what

he had written to the defendant and asked him if it was correct. A few changes were made here and there as directed by the defendant. The statement was then given to him to read. He took it and appeared to read it. The statement concluded, "I have read the foregoing statements; I have been informed of my rights—that I do not have to make any statements, that anything I say can be used against me, that I have the right to consult an attorney; no threats or promises of any kind have been made to me; these statements are made voluntarily and are true." The justice then asked him if he had read it. He said he had. The justice asked him if it was made voluntarily. He said it was. The defendant then signed the statement and swore to it, before the justice. The justice of the peace and the three peace officers all testified in substantial agreement that the statement was made in the manner and under the circumstances above set forth. Counsel for the defendant subjected them to a rigorous cross-examination. No evidence was offered in behalf of the defendant at that time though he was afforded an opportunity to make such showing as he might want to make in opposition to that made by the State. The jury were then recalled and the exhibit was re-offered. The objection was renewed. The court held the statement was voluntarily made and overruled the objection. On the record made the court was fully warranted in arriving at the conclusion that the statement was voluntarily made. Accordingly, there was no error in overruling the objection.

Subsequently, after the State had rested, the defendant took the stand in his own behalf. He was examined with respect to Exhibit 3. He admitted that the signature to the statement was his and that he had sworn it was true. He said, however, it was not a true statement of the facts; that he had not had intercourse with the complaining witness, and denied various of the other matters stated therein. He further said that he was not told by the state's attorney that he did not need to make a statement unless he wished to; that he did not read the statement and did not know what was in it; that he signed it because it was written out by the state's attorney and he was told the other boys had

made similar statements and that he might as well make the same; that he thought he had to sign it, and did so in the belief that if he did he would be released from jail at once; that though the state's attorney asked him if he wanted counsel, he had no money and had no opportunity to procure a lawyer; that he had requested the chief of police to notify or send for his father but the chief refused to comply with this request; that he was nicely treated and thought all of those present were his friends except the state's attorney; that one of the officers whom he knew very well and was friendly to him, sat beside him and told him he should make the statement as the other boys had made similar statements.

Thereafter the State recalled the justice of the peace and the three peace officers who then testified before the jury to the same effect as they had testified before the court in the absence of the jury. The chief of police further denied he had been asked by the defendant to send word to his father and stated that he had asked the boys if they wished word to be sent to their parents, but none of them had requested him to do so, and on the contrary some of them told him not to do so. Whether the defendant was one of the latter he could not say.

The defendant contends the court erred in his instructions to the jury dealing with the matter of the confession. It may be well to dispose of this contention at this point. The instructions are identical with those considered in the case of State v. Kerns (ND) supra. See 50 ND p 939, and 198 NW pp 701, 702. The portion here challenged is the last sentence of these instructions, reading: "However, should the jury believe there were no promises or threats made to the defendant which would be likely to produce an untrue confession, then and in that event you should consider the confession with all the other evidence in the case upon the question of the guilt or innocence of the defendant." Certainly, considering the instruction as a whole there was no error of which the defendant can complain.

Defendant made the statement the afternoon of July 10. At that time no formal complaint had been made charging him with any offense and no warrant had been issued for his arrest. In

the evening after he made the statement he was delivered by the police over to the custody of the sheriff of Burleigh County and thereafter confined in the county jail. No formal complaint was made against him and no warrant for his arrest was issued until July 12, on which day his preliminary examination was held. On the afternoon of the day on which he made the statement, one of the deputy sheriffs went out to the defendant's farm home and told his father that the defendant was under arrest and confined in jail.

The statute, § 29–0625, ND Rev Code 1943, provides that when an arrest is made by a peace officer without a warrant the person arrested must be taken without unnecessary delay before the nearest or most accessible magistrate in the county where the arrest is made. Section 29–0504 provides that when he is thus brought before the magistrate it is the duty of the arresting officer to specify the charge upon which he has made the arrest. It is then the duty of the magistrate or state's attorney to make a complaint of the offense charged and to cause an officer or some other person to subscribe and make oath to such complaint and file it. And § 29–0701 provides that when a defendant is brought before a magistrate upon an arrest on a charge of having committed a public offense which the magistrate is without authority to try and determine, the magistrate immediately shall inform him of the charge against him, of his right to the aid of counsel in every stage of the proceedings, and of his right to waive an examination. Defendant contends these statutory requirements were not complied with in the instant case and therefore the statement made under the circumstances heretofore detailed was inadmissible in evidence. In that behalf, he cites and relies upon the case of McNabb v. United States, 318 US 332, 87 L ed 819, 63 S Ct 608, and United States v. Haupt (CCA 7th Ill) 136 F2d 661, wherein it was held that confessions made by persons arrested by federal officers and not taken before a committing officer for examination as required by the federal statute were not admissible in evidence against the makers. The provisions of the federal statute are in effect the same as those of the North Dakota statutes above referred to. But in

the McNabb Case, the circumstances were wholly different from those shown in the instant case and were such that the court might well have held that the confession was procured in such a manner that even though every provision of the law requiring prisoners to be taken before a committing magistrate had been complied with, it was involuntary and therefore inadmissible. The Haupt Case was decided on the authority of the McNabb Case and of Anderson v. United States, 318 US 350, 87 L ed 829, 63 S Ct 599. But the inference is to be drawn from what is said in the Haupt Case that if the court had not felt bound by the precedent thus established, the holding would not have been as it was. In any event, the rule of these federal cases is not binding on the court in the instant case. See State v. Fahn, 53 ND 203, 205 NW 67; State v. Pauley, 49 ND 488, 192 NW 91; State v. Kerns, 50 ND 927, 198 NW 698, supra. And we are not inclined to adopt it. It seems to us the better rule is that mere delay in taking a defendant before a committing magistrate as required by statute, will not render a confession made in the meantime inadmissible. See People v. Alex, 265 NY 192, 192 NE 289, 94 ALR 1033, and cases cited in note thereto.

Defendant specifies numerous errors on account of testimony elicited from various of the State's witnesses over his objection that such testimony was incompetent or irrelevant. Some of these specifications we can properly summarily dispose of. Others require more particular attention. As to the former, it is enough to say that the State in presenting its case called as witnesses the complaining witness and the four other girls. They were permitted to testify over the defendant's objection as to various incidents that took place within and about the cabin. The party was at the cabin from one and a half to two and a half hours. The time is not definitely shown. During that time all of the boys and girls were at one time or another in the cabin, but for only a brief portion of the time were they all in there at the same time. The testimony to which the defendant objected was as to certain conversations and to the cries and screams of some or all of the girls, other noises that were heard, and as to what took place between some of the boys and some of the

girls. All of these matters were so closely related that in order to get a picture of the whole situation there, it was proper to receive them in evidence. Without detailing the several instances where the objections were interposed, it is sufficient to say that there was no prejudicial error in the court's rulings.

The complaining witness was in the cabin twice. The second time she went in with Ernie. Her testimony as to what occurred thereafter is, in effect, as follows: They sat down on the bed in the living room and the defendant and Gene came in. Gene said, "We'll take over now." Ernie left. Gene then shoved the complaining witness down on the bed. She struggled, fought, screamed and cried for help. None came. Gene called for the defendant to hold her hands. He did so. They then tore off her girdle and her pants, broke her garters, and took off her stockings and shoes, and while the defendant held her hands Gene had intercourse with her. He got up. She had struggled so hard and so long that she was exhausted and could not effectively resist when the defendant immediately thereafter attempted to have and finally did have intercourse with her. Defendant complains because she was permitted to detail all these circumstances. He insists that even though he held her hands while her clothing was being torn off, and while she was being assaulted by Gene, this constituted another and separate offense from that on which he was being tried and, therefore, this testimony was not admissible. The charge was rape in the second degree. Whether the complaining witness resisted or was able to resist at all, or resisted to the utmost, was material and relevant. Therefore, the testimony objected to was admissible as tending to show her physical condition as it affected her ability to resist and the cause of that condition. No rule is better established than that evidence of independent collateral crimes is not admissible merely to prove the depravity of a defendant or his criminal disposition. State v. Gummer, 51 ND 445, 200 NW 20, and cases cited. But if evidence otherwise relevant is offered the fact that incidentally it tends to establish collateral matters or to prove collateral crimes does not render it inadmissible. State v. Heaton, 56 ND 357, 217 NW 531; State v. Berenson,

65 ND 480, 260 NW 256; State v. Gummer, 51 ND 445, 200 NW 20, supra.

The defendant took the stand in his own behalf. He denied that he had had intercourse with the complaining witness in the cabin. He denied being in the cabin with Gene and the complaining witness. He denied having any part with Gene in the assault upon her. In rebuttal the State called Dewey. Dewey testified he was on the porch with Phyllis. That he and Phyllis were struggling there and that Phyllis cried and screamed. That he heard the defendant and Gene in the living room with the complaining witness. That he recognized their voices. That the complaining witness cried and screamed and called for help. That there was noise of a struggle there. Counsel for the defendant subjected Dewey to a rigorous cross-examination. He brought out the fact that Dewey had struggled with Phyllis on the porch for more than half an hour. That he finally overcame her and had intercourse with her. That she became unconscious and Dewey and some of the other boys carried her to the automobile. Defendant now complains because of the admission of this testimony. Dewey was a rebuttal witness. The matter of which the defendant particularly complains was brought out by defendant's counsel himself on cross-examination. He has but himself to blame for this and can predicate no error because of it.

Defendant called Ernie as his witness. Ernie testified as to matters material to the case. On cross-examination the State produced a written statement signed by him. This statement had been made on the afternoon of the day on which the boys were arrested when the state's attorney and the police officers examined all of those who had been at the cabin. Certain portions of the statement were used for impeachment purposes. They were in direct contradiction of the testimony given on direct examination by Ernie as to matters pertinent and relevant. The state's attorney inquired of Ernie as to whether he had made those statements. He admitted that he had. The state's attorney inquired if they were true as made. He said they were. The statement itself was not offered in evidence. The defendant assigns error on account of this use of the state-

ment for impeachment purposes. There was no error in thus using it.

The defendant has assigned numerous errors on account of instructions given to the jury, in addition to the one we have heretofore considered. These assignments, however, were not argued either orally or in the defendant's brief and it is enough to say there is no merit in them, especially in view of the disposition we have made of the challenges interposed to the information, and of the verdict returned.

There remains then for consideration only the question of the sufficiency of the evidence to sustain the verdict returned by the jury. The verdict was one of guilty of rape in the third degree. The only issues on which the jury were required to find in order to return this verdict were as to whether the defendant was over the age of seventeen years; whether the complaining witness was his wife; whether the defendant had intercourse with the complaining witness; and whether she was at the time of that intercourse under the age of eighteen years, the age of consent. As to the first and second of these issues, there could be no possible question. And the evidence offered and received was ample to sustain the affirmative findings on the two remaining issues. As said by the trial court in his memorandum made on denying the defendant's motion for a new trial, the evidence strongly and conclusively sustains the verdict.

The judgment and order appealed from are affirmed.

CHRISTIANSON, Ch. J., and BURKE and BURR, JJ., concur.