**Paul and Lynnette WITTHAUER, individually, and as next friends of Lindsey Witthauer, a minor, Plaintiffs and Appellees,**

v.

**BURKHART ROENTGEN, INC., Defendant and Appellant.**

**and**

**FARGO CLINIC, LTD., a.k.a., Merit-Care, Defendant, Third Party Plaintiff and Appellee,**

v.

**BURKHART ROENTGEN, INC., Third Party Defendant, Fourth Party Plaintiff and Appellant,**

v.

**DR. MACH GmbH & CO., Fourth Party Defendant.**

Civ. No. 900219.

Supreme Court of North Dakota.

March 19, 1991.

Robert Vogel Law Office, P.C., Grand Forks, for plaintiffs and appellees; argued by Alvin O. Boucher.

Bruce L. Madlom, Fargo, and Moench Law Firm, Bismarck, for defendant, third-party defendant, fourth-party plaintiff and appellant Burkhart Roentgen, Inc.; argued by Bruce L. Madlom, Fargo. Appearance by Dale W. Moench, Bismarck.

Vogel, Brantner, Kelly, Knutson, Weir & Bye, Ltd., Fargo, for defendant, third-party plaintiff and appellee Fargo Clinic, Ltd.; argued by Jane C. Voglewede.

VANDE WALLE, Justice.

Burkhart Roentgen, Inc. [Burkhart], appealed from a judgment entered on a jury verdict finding Burkhart 40 percent liable for $163,291.98 in damages awarded to Paul, Lynnette, and Lindsey Witthauer. Burkhart also appealed the denial of its post-trial motions. We affirm.

In March 1986, Lindsey Witthauer, the three and one-half month-old daughter of Paul and Lynnette Witthauer, was hospitalized at St. Luke's Hospital in Fargo for congestive heart failure and respiratory infection. Dr. Gerald Atwood, a pediatric cardiologist at Fargo Clinic, recommended that Lindsey undergo a cardiac catheterization procedure in which a small wire is inserted into a vein in the groin area and passed into the heart to search for defects.

Dr. Atwood performed the catheterization on the morning of April 4, 1986. The doctor was unable to insert the catheter through the skin, so he performed a "cutdown," a surgical procedure where an incision was made in the groin down to the vein to allow correct placement of the catheter. The "cutdown" procedure required use of a surgical lamp.

The lamp used for the procedure was a Mach–Soloflex, which was manufactured by Dr. Mach GmbH & Co., a German company, and distributed in this country by Burkhart. The Mach–Soloflex is a high-intensity surgical lamp which focuses light to illuminate a small area. The lamp was purchased by Fargo Clinic in 1984 and was permanently installed as part of the technical equipment owned and maintained by Fargo Clinic in the hospital room.

Before Dr. Atwood used the lamp, he was informed by a technician that the lamp had been broken during an emergency procedure the previous evening. The lamp was damaged when it was bumped by another piece of catheterization equipment which was being moved by a Fargo Clinic employee. The bump caused the lower housing of the lamp to fall to the floor. Unknown to the doctor, the lower housing contained a blue-tinted glass which served as a heat-protection filter.

Dr. Atwood decided to use the lamp after a technician turned it on and illumination occurred. The lamp was placed three feet above Lindsey and was used for approximately 15 minutes. After the catheterization procedure was completed, Dr. Atwood noticed redness and blistering in Lindsey's groin area and inner thigh where the lamp had been shining. Lindsey had received second and third degree burns to those areas. She subsequently underwent plastic

surgery and now has three permanent scars caused by the burns.

Tests later conducted on the lamp revealed that, with the heat-protection filter in place, the temperature at the focus of the lamp reached 83.4 degrees Fahrenheit after seven minutes and stabilized at that temperature even though the lamp was on for a greater period of time. Without the heat filter in place, the temperature at the focus of the lamp reached 169 degrees Fahrenheit after one minute, 217 degrees Fahrenheit after seven minutes, 224 degrees Fahrenheit after 10 minutes, and stabilized at 222 degrees Fahrenheit after 15 minutes. The lamp contained no warning label when Fargo Clinic purchased it. After Lindsey was burned, Fargo Clinic placed a warning label on the lamp which said "Do Not Operate This Light Without Filter." Fargo Clinic staff also discovered that the lower part of the housing was secured to the upper housing of the lamp with only a pin and thumb screw and added a reinforcing nut to the housing to make the lamp more secure.

The Witthauers sued Fargo Clinic on August 21, 1987, alleging that its negligence caused Lindsey's burns. On December 1, 1987, Fargo Clinic brought a third-party action against Burkhart on grounds of negligence, strict liability, and breach of warranty, alleging that the lamp was defective and unreasonably dangerous and that Burkhart negligently failed to provide adequate warnings of any particular dangers in the use of the lamp. Fargo Clinic asserted that the Witthauers's injuries were caused by Burkhart's "negligence, negligent failure to warn, negligent failure to instruct, breach of warranty whether express or implied, and strict liability." On May 15, 1989, Burkhart brought a fourth-party action against Dr. Mach GmbH & Co., the manufacturer of the lamp, seeking contribution and indemnity.

Prior to trial, Burkhart was represented by two different attorneys, each of whom was allowed to withdraw as counsel when Burkhart failed to cooperate in completing discovery and failed to pay attorney fees. On July 26, 1989, before Burkhart's second attorney had withdrawn, the trial court sent a notice to Burkhart's counsel setting the trial for March 12, 1990, with a pretrial conference scheduled for March 2, 1990. In the second attorney's motion to withdraw, which was served on Burkhart, the attorney stated that trial was scheduled for March 1990.

On February 7, 1990, the trial court sent Burkhart a notice changing the date of the pretrial conference to March 6, 1990. Also on that date, the Witthauers moved to amend their complaint to allege a direct products liability action against Burkhart, asserting that Lindsey's injuries were caused, in part, by Burkhart's "negligence, negligent failure to warn, negligent failure to instruct, breach of express and/or implied warranties, and strict liability...." Burkhart did not respond to the motion, nor did it appear at the hearing on the motion on February 22, 1990. On February 26, 1990, the trial court granted the Witthauers's motion to amend the complaint and granted Burkhart 15 days to answer the amended complaint.

Burkhart did not appear at the pretrial conference on March 6, 1990. When the jury trial began on March 12, 1990, neither Burkhart nor Dr. Mach GmbH & Co. appeared and the trial court severed Burkhart's fourth-party action. On March 15, 1990, the fourth day of the six-day trial, Burkhart appeared with counsel and moved to sever itself from the action or, in the alternative, for a continuance. The trial court denied both motions.

The jury, which was instructed on both strict products-liability and negligent products-liability issues, returned a special verdict finding that the lamp was not in a defective and unreasonably dangerous condition when it left Burkhart's possession, but that both Burkhart and Fargo Clinic were negligent in causing Lindsey's burns. The jury apportioned 60 percent of the negligence to Fargo Clinic and 40 percent of the negligence to Burkhart. The jury awarded Lindsey $100,000 in damages and awarded Paul and Lynnette $25,000 in damages, plus prejudgment interest. The trial court denied Burkhart's motions for judg-

ment notwithstanding the verdict or, in the alternative, for a new trial. Judgment was subsequently entered for $163,291.98. Burkhart is the sole appellant in this case.

## AMENDMENT OF WITTHAUERS'S COMPLAINT

Burkhart argues that the trial court's decision to allow the Witthauers to amend their complaint to assert a direct products liability action against it resulted in several reversible errors. Burkhart asserts that the trial court erred in allowing the Witthauers to amend their complaint approximately one month prior to trial and that the court further compounded the error by denying a continuance or severance when it finally appeared to defend on the fourth day of trial. Burkhart contends that, as a result, it was not provided adequate time to answer and defend the Witthauers's claims. We reject Burkhart's contentions.

■ Burkhart asserts that the trial court failed to provide it with the time required by Rules 4(f), 6(e) and 12(a), N.D.R.Civ.P., to answer the Witthauers's amended complaint. Assuming for purposes of this opinion that those time requirements are applicable when a plaintiff amends a complaint to assert a direct action against a third-party defendant who has been properly brought within the jurisdiction of the court by the original defendant [*compare Dysart v. Marriott Corp.*, 103 F.R.D. 15, 18–19 (E.D.Pa.1984)] we do not believe reversal is required in this case.

■ We agree with the federal courts which have held that the allowance of an incorrect time for the filing of an answer to a complaint is generally cured by the defendant either filing an answer, responding to the complaint in some manner, or appearing in the action, and that reversal is not justified absent a showing of prejudice. *Sanderford v. Prudential Ins. Co. of America*, 902 F.2d 897 (11th Cir.1990); *United Food & Commercial Workers Union v. Alpha Beta Co.*, 736 F.2d 1371 (9th Cir.1984); *U.S. v. National Muffler Mfg., Inc.*, 125 F.R.D. 453 (N.D.Ohio 1989); *Fountain Valley Corp. v. Wells*, 98 F.R.D. 679 (D.V.I.1983), *aff'd*, 728 F.2d 209 (3rd

Cir.), *cert. denied*, 471 U.S. 1107, 105 S.Ct. 2343, 85 L.Ed.2d 858 (1985); *A.C. Samford, Inc. v. United States*, 226 F.Supp. 72 (M.D. Georgia 1963); 4A Wright and Miller, *Federal Practice and Procedure: Civil* § 1088 (1987); see also, Rule 61, N.D.R.Civ.P. Although Burkhart did not formally file an answer to the Witthauers's amended complaint, Burkhart appeared at trial and was allowed to defend the action. Absent a demonstration of prejudice, which we discuss in conjunction with the other arguments below, Burkhart is not entitled to relief from the trial court's alleged error.

Burkhart asserts that it was prejudiced by the trial court's order allowing the Witthauers to amend their complaint to assert a direct action against it on "the eve of trial," allowing only 15 days to answer the complaint, and then refusing to grant Burkhart's request for severance or continuance when it finally appeared at trial to defend. According to Burkhart, it was unable to adequately prepare for trial.

A trial court's rulings on motions to amend a complaint and for a continuance or severance will not be overturned on appeal unless the complaining party demonstrates that the court abused its discretion. *Construction Associates, Inc. v. Fargo Water Equipment*, 446 N.W.2d 237 (N.D.1989); *Greenwood v. American Family Insurance Co.*, 398 N.W.2d 108 (N.D.1986); *Brauer v. James J. Igoe & Sons Construction, Inc.*, 186 N.W.2d 459 (N.D.1971). Under the circumstances of this case, Burkhart has not demonstrated that the trial court abused its discretion or that its rulings prejudiced Burkhart.

The record shows that Fargo Clinic brought its third-party complaint against Burkhart in December 1987. Burkhart's attorneys actively participated in discovery until the court allowed them to withdraw from representation for Burkhart's failure to cooperate in April 1989 and August 1989, respectively. During that time, Burkhart was provided notice of all depositions, hearings, and the trial itself. Burkhart was served with interrogatories by the Witthauers and itself sent out interrogatories and requests for production of doc-

uments. Burkhart noticed and took its own depositions and initiated a fourth-party action.

The record further demonstrates that Burkhart's attorney was sent notice of trial by the trial court on July 26, 1989, and that, in his motion to withdraw which was served on Burkhart by certified mail, the attorney stated that trial was set for March 1990. Burkhart received an amended notice that the pretrial conference was set for March 6, 1990. Burkhart also received notice that the Witthauers's motion to amend their complaint would be heard on February 22, 1990. Burkhart did not respond to the motion to amend or appear at the hearing, nor did it appear at the pretrial conference.

Significantly, the Witthauers's amended complaint against Burkhart paralleled the third-party claims Fargo Clinic asserted against Burkhart. Burkhart actively participated in discovery matters pertaining to defending Fargo Clinic's claim, which it was bound to do. See 3 *Moore's Federal Practice* ¶ 14.13 (2d ed. 1990). Courts have stated that when a third party has been served with a third-party complaint, the third-party defendant has actual notice of the plaintiff's potential claim against it and, therefore, the third-party defendant must gather evidence and vigorously prepare a defense. *Rakes v. Fairmont Mobile Homes, Inc.,* 358 S.E.2d 236 (W.Va. 1987); *Duffy v. Horton Memorial Hospital,* 66 N.Y.2d 473, 497 N.Y.S.2d 890, 893, 488 N.E.2d 820, 823 (1985). Burkhart had essentially been actively defending the claims of Fargo Clinic and the Witthauers until Burkhart's second attorney withdrew in August 1989.

In denying the motion for a continuance or severance, the trial court stated:

"THE COURT: Just the Court's record, without even going outside the record, indicates to this Court that your client has more than adequate notice of this trial. And even the calls that this Court has received since that time on almost a daily basis for the last two weeks would indicate that there has been knowledge."

Upon this record, we conclude that the trial court did not abuse its discretion in permitting the Witthauers to amend their complaint or in denying Burkhart's motions for a severance or continuance. Any prejudice suffered by Burkhart resulted from its own inaction rather than from the trial court's rulings.

### SUBMISSION OF NEGLIGENCE CLAIM TO JURY

Burkhart asserts that the trial court erred in submitting the issue of its negligence to the jury. We disagree.

Burkhart first argues that the trial court erred when it submitted the issue of Burkhart's negligence to the jury after having dismissed the negligence claim for insufficient evidence. This argument is without merit.

The record reflects that at one point during a lengthy discussion between the trial court and counsel for the parties, the trial court decided that it would not instruct on negligence and stated, "so I guess, in essence, [it is] dismissed." No written order dismissing the claim or Rule 54(b), N.D.R. Civ.P., certification was entered. After hearing further discussion and argument, the trial court decided to instruct on negligence. The trial court merely changed its mind during the course of objections of counsel to the jury instructions. No "motion to have the [negligence] claim reinserted" was required.

When recovery is sought under a negligent failure-to-warn theory and under a strict liability theory of marketing a product which is defective and unreasonably dangerous because it is not accompanied by adequate warnings, the trial court must instruct on each theory if there is evidence to support both theories. *Butz v. Werner,* 438 N.W.2d 509 (N.D.1989); *Mauch v. Manufacturers Sales & Service, Inc.,* 345 N.W.2d 338 (N.D.1984). The fact that the jury found that the lamp was not defective or unreasonably dangerous does not preclude recovery under a negligent failure-to-warn theory. *Andersen v. Teamsters Local 116 Bldg. Club,* 347 N.W.2d 309 (N.D.

1984). The issue is whether there was sufficient evidence presented to support the trial court's instruction to the jury on the negligent failure-to-warn theory. We conclude that the evidence was sufficient to support the trial court's submission of the instruction as well as to sustain the jury's verdict on the issue.

Fargo Clinic presented evidence that the Mach–Soloflex lamp distributed by Burkhart reached temperatures of more than 220 degrees Fahrenheit when the heat-protection filter was not in place. It was undisputed that the lamp contained no warnings about this danger. Evidence was also presented to show that Fargo Clinic did not realize this danger until after Lindsey was burned, and that the lamp would not have been used if it had been warned of the danger.

Furthermore, evidence was presented indicating that Burkhart was aware of the danger. Burkhart published a written "Prospectus" in 1985, after the lamp was sold to Fargo Clinic but before Lindsey was burned, which described the Mach–Soloflex as having a "heat protection filter." This description did not appear in Burkhart's 1982 prospectus and the design of the lamp did not change between 1982 and 1985. Burkhart catalogs described the lamp as having "negligible heat buildup." Fargo Clinic did not receive these materials.

Evidence was also introduced indicating that it was foreseeable that the lamp's lower housing would be removed, either intentionally or accidentally. The lower housing was not securely attached to the upper housing and Fargo Clinic employees testified that it was foreseeable that equipment in the catheterization lab would be bumped because the equipment had to be moved often before and during medical procedures. Also, the absence of the lower housing did not change the illuminating function of the lamp. The danger posed by using the lamp without the lower housing cannot be considered obvious to its users. Compare Morrison v. Grand Forks Housing Authority, 436 N.W.2d 221, 224 (N.D. 1989) [noting that "courts have held that the duty to warn does not attach when the danger or potentiality of danger is obvious or is known to the injured person"]; Fanning v. LeMay, 38 Ill.2d 209, 230 N.E.2d 182 (1967) [law does not require warning against mishap in use of common articles such as shoes].

We conclude that there was ample evidence to submit the question of Burkhart's negligence to the jury, and for the jury to determine that Burkhart was, in fact, negligent for failing to warn of the dangers in using the Mach–Soloflex without its heat-protection filter.

## ALTERATION OR MODIFICATION OF PRODUCT

Burkhart asserts that the trial court erred in refusing to grant its requested instruction based on § 28–01.1–04, N.D. C.C., which provides:

"28–01.1–04. Alteration or modification of product is defense to action. No manufacturer or seller of a product shall be held liable for any injury, death, or damage to property sustained as a result of an alleged defect, failure to warn or protect, or failure to properly instruct in the use or misuse of that product, where a substantial contributing cause of the injury, death, or damage to property was an alteration or modification of the product, which occurred subsequent to the sale by the manufacturer or seller to the initial user or consumer, and which changed the purpose, use, function, design, or intended use or manner of use of the product from that for which the product was originally designed, tested, or intended."

Burkhart asserts that this statute provides it with an absolute defense because Fargo Clinic used the lamp in a modified or altered state, i.e., without the lower housing containing the heat-protection filter in place. At the very least, Burkhart argues, the jury should have been instructed on the issue.

Assuming for purposes of this opinion that Fargo Clinic's act of accidentally damaging the lamp constitutes an "alteration or modification of the product" within the

meaning of the statute, we nevertheless reject Burkhart's contention.

In construing statutes, we must presume that the Legislature did not intend absurd and ludicrous results or unjust consequences. E.g., *Keepseagle v. Backes,* 454 N.W.2d 312 (N.D.1990); *Wallentinson v. Williams County,* 101 N.W.2d 571 (N.D. 1960). If we were to construe § 28-01.1-04 as Burkhart suggests, an absurd result would follow.

■ This court has long recognized that, although a seller or manufacturer is "not required to point out dangers which are known or are obvious to the user" of a product [*Lindenberg v. Folson,* 138 N.W.2d 573, 581 (N.D.1965)], a seller or manufacturer has a duty not only to warn of dangers inherent in the intended use of a product, but also to warn of dangers involved in a use which can be reasonably anticipated or foreseen. *Morrison v. Grand Forks Housing Authority, supra; Andersen v. Teamsters Local 116 Bldg. Club, supra; Olson v. A.W. Chesterton Co.,* 256 N.W.2d 530 (N.D.1977); *Seibel v. Symons Corporation,* 221 N.W.2d 50 (N.D.1974). As we earlier noted, the danger posed by using the lamp without the lower housing was not obvious to its users and it was reasonably foreseeable that the lamp would be used without the lower housing. Burkhart's liability was premised on its negligent failure to warn that the lower housing of the lamp contained a heat-protection filter, and that without the filter in place, the temperature at the focus of the lamp would reach harmful levels. Under Burkhart's interpretation, because of Fargo Clinic's use of the lamp without the lower housing, the statute would shield it from any liability whatsoever for negligently failing to warn of the dangers resulting from a foreseeable alteration or modification of the lamp. We will not assume that the Legislature intended a result so unjust and a result which appears contrary to prevailing doctrine. See 3 *American Law of Product Liability 3d,* § 43:16 (1987); 1A Frumer and Friedman, *Products Liability,* § 3.03[4][d] (1989); 2 Vargo, *Products Liability Practice Guide,* § 15.13 (1988).[1] We conclude that § 28-01.1-04 does not preclude a seller's liability when it is premised on the negligent failure to provide adequate warnings of the dangerous consequences resulting from a foreseeable alteration or modification of a product.

We therefore conclude that, under the circumstances of this case, the trial court did not err in refusing to instruct the jury on alteration or modification of a product.

Because of our disposition of the issues on the appeal from the judgment entered on the jury verdict, we conclude that the trial court did not abuse its discretion in denying the post-trial motions for judgment notwithstanding the verdict and, in the alternative, for a new trial. *See Dewey v. Lutz,* 462 N.W.2d 435, 445 (N.D.1990). It is unnecessary to address the other issues raised by the parties.

Accordingly, the judgment and denial of Burkhart's post-trial motions are affirmed.

ERICKSTAD, C.J., GIERKE, J., and VERNON R. PEDERSON, Surrogate Judge, concur.

MESCHKE, J., concurs in the result.

---

1. We recognize that not all courts require that an alteration or modification of a product be unforeseeable in order to preclude imposition of liability against a manufacturer or seller. However, those cases are distinguishable.

For example, in *Robinson v. Reed-Prentice Division of Package Machinery Co.,* 49 N.Y.2d 471, 426 N.Y.S.2d 717, 720-21, 403 N.E.2d 440, 443 (1980), the Court of Appeals of New York held that "[p]rinciples of foreseeability ... are inapposite where a third party affirmatively abuses a product by consciously bypassing built-in safety features." We are not confronted with affirmative abuse of a product or a conscious bypassing of safety features in this case. The lamp was accidentally damaged and Fargo Clinic was unaware that the lower housing of the lamp contained a safety feature.

Also, in *Hines v. Joy Mfg. Co.,* 850 F.2d 1146 (6th Cir.1988), the Court of Appeals for the Sixth Circuit refused to read the concept of foreseeability into a provision of the Kentucky Products Liability Act which precludes recovery when an unauthorized alteration or modification is made to a product. Unlike § 28-01.1-04, N.D.C.C., the Kentucky statute specifically states that liability is precluded when a product is altered or modified "whether or not said defendant was at fault or the product was defective." Ky.Rev.Stat.Ann. § 411.320(2) (Supp.1990).

VERNON R. PEDERSON, Surrogate Judge, sitting in place of LEVINE, J., disqualified.