**SERVICE OIL, INC., Plaintiff and Appellee,**

v.

**STATE of North Dakota, Defendant and Appellant.**

Civ. Nos. 910135, 910168.

Supreme Court of North Dakota.

Jan. 9, 1992.

Joseph A. Turman (appearance), of De-Mars & Turman, Fargo, and Rebecca Lippman (argued), of Swidler & Berlin, Washington, D.C., for plaintiff and appellee.

Joy L. Wezelman (argued) and Robert W. Wirtz (appearance), Asst. Attys. Gen., State Tax Dept., Bismarck, for defendant and appellant.

ERICKSTAD, Chief Justice.

The State of North Dakota appeals from a judgment declaring Section 57–43.1–02(3), N.D.C.C., unconstitutional and ordering the State to refund $102,300.58 in excess taxes paid by Service Oil, Inc., or to collect back taxes from taxpayers favored by that statute. The State also appeals from a judgment awarding Service Oil $54,191.83 in attorneys' fees. We affirm in part and reverse in part.

Section 57–43.1–02, N.D.C.C.,[1] imposes a per gallon tax on all motor vehicle fuels

---

1. At the times relevant to the taxes at issue in this action, Section 57–43.1–02, N.D.C.C., provided:

"*57–43.1–02. Tax imposed on motor vehicle fuels—Tax reduced for certain alcohol-blended fuels.*

"1. Except as otherwise provided in this section, a tax of thirteen cents per gallon [3.79 liters] is imposed on all motor vehicle fuel sold or used in this state.

"2. The tax imposed on gasoline sold which contains a minimum ten percent blend of a qualifying alcohol whose purity is at least ninety-nine percent alcohol is reduced in accordance with this subsection and subsection 3. An alcohol is a qualifying alcohol if it is methanol produced from coal or if the taxpay-

sold or used in North Dakota. Subsection (2) reduces the per gallon tax for motor vehicle fuels containing at least a ten percent blend of "qualifying alcohol," *i.e.,* methanol produced from coal or from agricultural products produced entirely in the United States. Subsection (3), enacted effective July 1, 1985, eliminates the tax reduction for motor vehicle fuels containing qualifying alcohol manufactured outside of North Dakota unless the state where the qualifying alcohol was manufactured provides a similar tax reduction for motor vehicle fuels containing qualifying alcohol manufactured in North Dakota. Subsection (3) also limits the tax reduction for motor vehicle fuels containing qualifying alcohol manufactured in another state to the lesser of North Dakota's tax reduction or the other state's tax reduction for motor vehicle fuels containing qualifying alcohol manufactured in North Dakota.

Service Oil, a North Dakota corporation, purchases and blends motor vehicle fuels. Between July 1985 and December 1987, Service Oil purchased motor vehicle fuels containing qualifying alcohol manufactured outside North Dakota and received a smaller tax reduction than it would have received if it had purchased motor vehicle fuels containing qualifying alcohol manufactured in North Dakota.

On May 31, 1988, the United States Supreme Court held that an Ohio reciprocity provision similar to Section 57–43.1–02(3), N.D.C.C., impermissibly discriminated against interstate commerce, therefore violating the Commerce Clause of the United States Constitution.[2] *New Energy Company of Indiana v. Limbach,* 486 U.S. 269, 108 S.Ct. 1803, 100 L.Ed.2d 302 (1988).

On August 11, 1989, Service Oil sued the State, asserting that Section 57–43.1–02(3), N.D.C.C., violated the Commerce Clause of the United States Constitution and seeking a refund of discriminatory taxes. The State admitted that Section 57–43.1–02(3), N.D.C.C., was unconstitutional under *New Energy,* but asserted that Service Oil was not entitled to a refund. On December 12, 1989, the parties agreed to postpone any further proceedings in this action until the United States Supreme Court rendered decisions in *McKesson Corp. v. Division of Alcoholic Beverages and Tobacco,* 496 U.S. 18, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990) [*McKesson*], and *American Trucking Associations, Inc. v. Smith,* 496 U.S. 167, 110 S.Ct. 2323, 110 L.Ed.2d 148 (1990) [*ATA*]. *McKesson* and *ATA* were decided on June 4, 1990.

Service Oil moved for summary judgment on September 5, 1990. On September 28, 1990, the State requested a six-month continuance to conduct discovery and to file a responsive brief. On November 29, 1990, the district court denied the State's request for a six-month continuance and instead allowed the State until January 4, 1991, to conduct discovery and to file a responsive brief.

Thereafter, the district court granted Service Oil's motion for summary judg-

---

er certifies that it is derived from agricultural products produced entirely in the United States. For qualifying alcohols, the tax is:

"a. From July 1, 1985, through June 30, 1987, eight cents per gallon [3.79 liters] less than the tax imposed under subsection 1.

"b. From July 1, 1987, through December 31, 1992, four cents per gallon [3.79 liters] less than the tax imposed under subsection 1.

"c. After December 31, 1992, at the same rate as the tax imposed under subsection 1.

"3. The tax reduction allowed on gasoline under this section does not apply to gasoline which contains qualifying alcohol manufactured or distilled outside this state, unless the state where the alcohol is manufactured or distilled provides a specific reduction, exemption, credit, or refund from that state's motor vehicle fuels tax for what would be a qualifying alcohol manufactured or distilled in this state. Qualifying alcohols manufactured or distilled in another state are eligible for the tax reduction allowed by this section, but only to the extent that state's specific reduction, exemption, credit, or refund allowance applies to qualifying alcohol manufactured or distilled in this state. The tax reduction allowed by this subsection qualifying alcohol manufactured or distilled in another state cannot exceed the amount specified in subsection 2."

2. Art. 1, § 8, of the United States Constitution provides:

"The Congress shall have power:

    *    *    *    *    *    *

"To regulate commerce ... among the several states."

ment, concluding that Section 57–43.1–02(3), N.D.C.C., discriminated against interstate commerce in a manner that was not demonstrably justified by a factor unrelated to economic protectionism. Relying on *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), the district court concluded that its decision applied retroactively. Relying upon *McKesson*, the court concluded that, for the period from July 1985 to December 1987, due process required the State to refund $102,300.58 in discriminatory taxes to Service Oil, or to collect back taxes from all taxpayers favored by the unconstitutional tax scheme,[3] or to implement a combination of those two remedies.

Pursuant to Section 28–32–21.1, N.D.C.C., Service Oil requested approximately $54,000 in attorneys' fees and costs. The State resisted, contending that its actions were substantially justified and that the requested attorneys' fees were not reasonable. The district court concluded that the State's position was not substantially justified[4] and awarded Service Oil $54,191.83 in attorneys' fees and costs. The State has appealed.

**I. CONTINUANCE**

■ The State initially contends that the district court abused its discretion in denying its request for a six-month continuance to conduct discovery. The State argues that additional time for discovery was essential to refute Service Oil's allegation that it had been economically disadvantaged by Section 57–43.1–02(3), N.D.C.C. The State asserts that it "justifiably chose not to initiate extensive discovery without knowing if the district court would grant the requested continuance."

■ The decision to grant or deny a motion for continuance is a matter within a trial court's discretion. *E.g., Witthauer v. Burkhart Roentgen, Inc.*, 467 N.W.2d 439 (N.D.1991). In considering a motion for a continuance a trial court also has discretion to determine the length of a continuance. *State v. Nagel*, 75 N.D. 495, 28 N.W.2d 665 (1947). On appeal, we will not overturn the trial court's decision on a continuance absent an abuse of discretion. *Witthauer, supra; Nagel, supra.* A trial court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner. *Construction Associates, Inc. v. Fargo*

---

**3.** In *McKesson, supra,* 496 U.S. at ——, 110 S.Ct. at 2252 n. 23, 110 L.Ed.2d at 39, the Court observed:

"We previously have held that the retroactive assessment of a tax increase does not necessarily deny due process to those whose taxes are increased, though beyond some temporal point the retroactive imposition of a significant tax burden may be 'so harsh and oppressive as to transgress the constitutional limitation,' depending on 'the nature of the tax and the circumstances in which it is laid.' *Welch v. Henry*, 305 U.S. 134, 147, 59 S.Ct. 121, 126, 83 L.Ed. 87 (1938). See *United States v. Hemme*, 476 U.S. 558, 106 S.Ct. 2071, 90 L.Ed.2d 538 (1986); *United States v. Darusmont*, 449 U.S. 292, 101 S.Ct. 549, 66 L.Ed.2d 513 (1981); cf. *United States v. Sperry Corp.*, 493 U.S. 52, 63–65, 110 S.Ct. 387, 396, 107 L.Ed.2d 290 (1989) ('It is surely proper for Congress to legislate retrospectively to ensure that costs of a program are borne by the entire class of persons that Congress rationally believes should bear them'); *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 16, 96 S.Ct. 2882, 2893, 49 L.Ed.2d 752 (1976) ('[L]egislation readjusting rights and burdens is not unlawful solely because it upsets otherwise settled expectations. This is true even though

the effect of the legislation is to impose a new duty or liability based on past acts') (citations omitted).

"Because we do not know whether the State will choose in this case to assess and collect back taxes from previously favored distributors, we need not decide whether this choice would violate due process by unduly interfering with settled expectations.

"Should the State choose this remedial alternative, the State's effort to collect back taxes from previously favored distributors may not be perfectly successful. Some of these distributors, for example, may no longer be in business. But a good-faith effort to administer and enforce such a retroactive assessment likely would constitute adequate relief, to the same extent that a tax scheme would not violate the Commerce Clause merely because tax collectors inadvertently missed a few instate taxpayers."

**4.** Although the district court's memorandum opinion indicates that it determined that the tax commissioner's actions were not "clearly justified," the judgment indicates that the court determined that the State "was not substantially justified in its position on the merits." The judgment controls when there is a conflict. *See, e.g., Larson v. Baer*, 418 N.W.2d 282 (N.D.1988).

*Water Equipment Co.*, 446 N.W.2d 237 (N.D.1989).

Service Oil commenced this action on August 11, 1989. The State was not precluded from conducting discovery from then until December 12, 1989, when the parties agreed to postpone any further proceedings pending the Supreme Court decisions in *McKesson* and *ATA*. After *McKesson* and *ATA* were decided on June 4, 1990, the State had until January 4, 1991, to conduct discovery. Even after Service Oil moved for summary judgment on September 5, 1990, the State still had four months to conduct discovery. Excluding the time when the parties agreed to postpone further proceedings in this case, the State had eleven months to conduct discovery. However, the State apparently made no effort to conduct discovery during any of these periods. Under these circumstances we cannot say that the district court acted arbitrarily, unreasonably, or unconscionably in denying the State's request for a six-month continuance and instead granting the State one additional month to conduct discovery. The district court did not abuse its discretion.

## II.  RIGHT TO REFUND

The State next argues that the district court erred as a matter of law in ordering it to refund $102,300.58 in discriminatory taxes for the period from July 1985 through December 1987, or to collect back taxes from taxpayers favored by the discriminatory tax scheme. In *ATA, supra,* and *McKesson, supra,* the Supreme Court identified two distinct issues involved in this analysis. In *ATA,* the Court considered the threshold issue of whether a judicial decision applies retroactively or prospectively. In *McKesson,* the court considered the issue of the appropriate relief once a judicial decision is determined to apply retroactively.

### A.  RETROACTIVITY

■  Within the analytical framework of *ATA,* we initially consider the threshold issue of retroactive or prospective application of *New Energy* and the district court's

decision. In *ATA,* the Court considered whether its decision in *American Trucking Associations, Inc. v. Scheiner,* 483 U.S. 266, 107 S.Ct. 2829, 97 L.Ed.2d 226 (1987), applied retroactively or prospectively to Arkansas' taxation of highway use. In *Scheiner* the Court had held that Pennsylvania's unapportioned highway flat use tax violated the Commerce Clause. In *ATA,* a sharply divided Court held that *Scheiner* applied prospectively and not retroactively.

The plurality, written by Justice O'Connor and followed by three other justices, analyzed the retroactivity issue under the three-pronged analysis of *Chevron Oil Co. v. Huson,* 404 U.S. 97, 106–107, 92 S.Ct. 349, 355, 30 L.Ed.2d 296, 306 (1971):

"First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied ... or by deciding an issue of first impression whose resolution was not clearly foreshadowed.... Second, it has been stressed that 'we must ... weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operations.' ... Finally, we have weighed the inequity imposed by retroactive application, for '[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the "injustice or hardship" by a holding of nonretroactivity.'"  [Citations omitted.]

The plurality initially concluded that *Scheiner* applied prospectively because it clearly established a new principle of law by expressly overruling prior caselaw which Arkansas had relied upon in enacting its highway use tax. Second, the plurality concluded that the purpose of the Commerce Clause did not dictate retroactive application of the new rule of law announced in *Scheiner* because retroactive application would not deter future free trade violations. Third, the plurality concluded that applying *Scheiner* retroactively would produce substantial inequitable re-

sults because Arkansas had relied upon valid existing precedent in enacting and implementing its highway use tax.

Justice Scalia concurred in the result of the plurality, concluding that, in the interest of protecting litigants' settled expectations, *Scheiner* applied prospectively because it overruled clear past precedent. The dissent, written by Justice Stevens and followed by three other justices, essentially concluded that fundamental notions of fairness dictated that *Scheiner* be retroactively applied to claims not barred by the statute of limitations and to cases where the parties' rights had not been finally determined by a court of law.

Under any of the approaches taken in *ATA*, we conclude that *New Energy* applies retroactively. Under the *Chevron* analysis, *New Energy* applies retroactively because it did not announce a new principle of law or overrule prior caselaw. Instead, it followed clear precedent. *See, e.g., Bacchus Imports, Ltd. v. Dias*, 468 U.S. 263, 104 S.Ct. 3049, 82 L.Ed.2d 200 (1984); *Sporhase v. Nebraska ex rel. Douglas*, 458 U.S. 941, 102 S.Ct. 3456, 73 L.Ed.2d 1254 (1982); *Lewis v. BT Investment Managers, Inc.*, 447 U.S. 27, 100 S.Ct. 2009, 64 L.Ed.2d 702 (1980); *Dean Milk Co. v. Madison*, 340 U.S. 349, 71 S.Ct. 295, 95 L.Ed. 329 (1951). Although the cases relied upon by the unanimous Supreme Court in *New Energy* did not specifically deal with the issue of tax benefits for motor vehicle fuels with qualifying alcohol, the principles of law from those decisions clearly foreshadowed the well-established contours for Commerce Clause challenges to discriminatory laws involving economic protectionism.

*Bacchus, supra,* typifies those cases. It was decided in 1984, before Section 57–43.1–02(3), N.D.C.C., was enacted and involved the interrelationship of a discriminatory tax on alcohol and the twenty-first amendment to the United States Constitution.[5] Despite the limitations of the twenty-first amendment, a majority held that

under well-established Commerce Clause principles, the discriminatory tax on alcohol was unconstitutional. The dissent concluded that the twenty-first amendment foreclosed the Commerce Clause claim. The application of established Commerce Clause principles to this discriminatory tax is clearer than *Bacchus* because the interrelationship with the twenty-first amendment is not involved in this case.

We agree with the district court's conclusion that "the present case deals with the application of the well-established Commerce Clause principle. Like *New Energy*, the decision regarding the constitutionality of Section 57–43.1–02(3) does not establish a new legal principle."

Under the second prong of the *Chevron* analysis, the purpose of the Commerce Clause is to prevent discrimination against interstate commerce by regulations designed to benefit in-state economic interests and to burden out-of-state competitors. *New Energy, supra; see State v. Quill Corp.*, 470 N.W.2d 203 (N.D.), *cert. granted,* —— U.S. ——, 112 S.Ct. 49, 116 L.Ed.2d 27 (1991). "A cardinal rule of Commerce Clause jurisprudence is that '[n]o State, consistent with the Commerce Clause, may "impose a tax which discriminates against interstate commerce ... by providing a direct commercial advantage to local business." ' " *Bacchus, supra,* 468 U.S. at 268, 104 S.Ct. at 3053, 82 L.Ed.2d at 207, quoting *Boston Stock Exchange v. State Tax Comm'n*, 429 U.S. 318, 329, 97 S.Ct. 599, 50 L.Ed.2d 514 (1977) and *Northwestern States Portland Cement Co. v. Minnesota*, 358 U.S. 450, 458, 79 S.Ct. 357, 3 L.Ed.2d 421 (1959). For purposes of the Commerce Clause, it is irrelevant that a state intended to aid local interests rather than to harm out-of-state interests. *Bacchus, supra.*

■ Section 57–43.1–02(3), N.D.C.C., discriminates against interstate commerce in a manner inconsistent with the purpose of the Commerce Clause. Unlike *ATA*, the district court's decision and *New Energy*

---

5. Section 2 of the twenty-first amendment of the United States Constitution provides:
"The transportation or importation into any state, territory, or possession of the United

States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited."

are entirely consistent with clearly established Commerce Clause precedent and retroactive application will therefore further the purpose of the Commerce Clause by deterring states from committing future free trade violations.

Under the third prong of the *Chevron* analysis, we are not convinced that applying *New Energy* and the district court's decision retroactively will produce substantial inequitable results. Unlike *ATA*, where Arkansas followed prior precedent and had reason to believe that its highway use tax was constitutional, the invalidation of this discriminatory tax was clearly foreshadowed when it was adopted in 1985. In view of the established Commerce Clause precedents, the State's reliance interest in this relatively short-lived taxing scheme merits little concern. Applying *New Energy* retroactively to these taxes would not produce substantial inequitable results.

Under the approach taken by Justice Scalia in *ATA*, *New Energy* applies retroactively because it did not overrule clear past precedent and therefore the interests in protecting litigants' settled expectations are not present. Under the approach taken by Justice Stevens and the dissent in *ATA*, fundamental notions of fairness dictates that *New Energy* be retroactively applied to the taxes at issue in this case.

The Supreme Court's recent decision in *James B. Beam Distilling Co. v. Georgia,* — U.S. ——, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991), does not require a different result. Although there was no majority opinion in *Beam*, six justices ultimately concluded that the Court's prior decision in *Bacchus, supra*, applied retroactively.

Justice Souter, joined by Justice Stevens, concluded that because *Bacchus* applied retroactively to the litigants in that case, it would be unfair not to retroactively apply it to other litigants not barred by procedural requirements or res judicata. Justice White concurred in the judgment and agreed that, under several suppositions, *Bacchus* applied retroactively to litigants whose cases were not final at the time of that decision. Justices Blackmun, Scalia, and Marshall also concurred in the judg-

ment and essentially concluded that prospective application of judicial decisions breached the Court's "obligation to discharge [its] constitutional function" [*Beam, supra,* 111 S.Ct. at 2450 (Justice Blackmun, concurring)] and was "beyond [the Court's] power." [*Id.,* 111 S.Ct. at 2451 (Justice Scalia, concurring)]. Justice O'Connor, joined by Chief Justice Rehnquist and Justice Kennedy, dissented and concluded that *Bacchus* applied prospectively under the *Chevron* analysis.

Because we have concluded that *New Energy* applies retroactively under the *Chevron* analysis, *Beam* does not require a different result. We therefore hold that the district court's decision and *New Energy* apply retroactively to the taxes at issue in this case.

## B. REMEDY

■ Having reached that conclusion, we next turn to the remedy issue. In *McKesson,* the Court observed that because exaction of an unlawful tax is a deprivation of property under the Due Process Clause, a state must provide a taxpayer with either predeprivation or post-deprivation procedural safeguards. The Court recognized that predeprivation procedural safeguards may include authorizing taxpayers to sue to enjoin the imposition of the tax prior to its payment, or to withhold payments and interpose objections as a defense in a tax enforcement proceeding initiated by the state. The Court held that if a state places a taxpayer under duress to promptly pay a tax prior to resolving any dispute over the validity of the tax, the Due Process Clause obligates the state to provide post-deprivation procedural safeguards in the form of meaningful retroactive relief to rectify any unconstitutional deprivation.

In determining whether or not a state places the taxpayer under duress to promptly pay a tax, the Court said:

"[W]hen a tax is paid in order to avoid financial sanctions or a seizure of real or personal property, the tax is paid under 'duress' in the sense that the State has not provided a fair and meaningful predeprivation procedure.... Justice

Holmes suggested ... that a taxpayer pays 'under duress' when he proffers a timely payment merely to avoid a 'serious disadvantage in the assertion of his legal ... rights' should he withhold payment and await a state enforcement proceeding in which he could challenge the tax scheme's validity 'by defence in the suit.' ...

"In contrast, if a State chooses not to secure payments under duress and instead offers a meaningful opportunity for taxpayers to withhold contested tax assessments and to challenge their validity in a predeprivation hearing, payments tendered may be deemed 'voluntary.' The availability of a predeprivation hearing constitutes a procedural safeguard against unlawful deprivations sufficient by itself to satisfy the Due Process Clause, and taxpayers cannot complain if they fail to avail themselves of this procedure." *McKesson, supra,* 496 U.S. at ——, 110 S.Ct. at 2251 n. 21, 110 L.Ed.2d at 37.

*McKesson* held that because Florida employed financial sanctions and summary remedies compelling taxpayers to tender payments before their objections were entertained and resolved, the minimum federal requirements of the Due Process Clause required Florida to provide taxpayers with a post-deprivation opportunity to contest the validity of the tax and a clear and certain remedy designed to render that opportunity meaningful by preventing any permanent unlawful deprivation of property. The Court ordered Florida to refund the discriminatory taxes, or, consistent with other constitutional restrictions, to collect back taxes from favored competitors, or to implement a combination of those two remedies.

In this case, the State argues that it provides taxpayers with adequate predeprivation relief in the form of injunctive relief through a declaratory judgment action under Ch. 32–23, N.D.C.C. Relying upon *William Clairmont, Inc. v. State,* 261 N.W.2d

780 (N.D.1977), the State also asserts that Service Oil voluntarily paid the taxes because it failed to seek alternatives to payment of the taxes, failed to pay the taxes under protest, failed to seek an injunction, or failed to pursue any other options, and instead waited until after *New Energy* was decided before seeking a refund. We disagree.

North Dakota, like Florida, statutorily provides for injunctive relief under the general provisions for a declaratory judgment. Ch. 32–23, N.D.C.C.; Fla.Stat.Ann. Ch. 86. Section 57–43.1–21, N.D.C.C., also specifically provides:

*"Failure to file report—Penalty—Revocation of license—Excuse for delay.* If the holder of a license to sell motor vehicle fuel fails to file the report required to be filed, or to pay the full amount of the tax as required by this chapter, there is imposed a penalty of five dollars, or a sum equal to five percent of the tax due, whichever is greater, together with interest at the rate of one percent per month on the tax due, for each calendar month or fraction of a month during which the failure continues, excepting the month within which the report was required to be filed or the tax became due. The commissioner may revoke the license and, if so, the commissioner shall notify the license holder promptly by a notice sent by registered or certified mail to the post-office address of the licenseholder as it appears in the commissioner's records. However, if the report is filed and the tax paid within ten days after the date it becomes due and if it is established under oath that the delay was due to accident or justifiable oversight, then the commissioner may continue the license in full force and effect. The commissioner, for good cause shown, may waive all or any part of the penalty or interest provided by this section."

Florida had similar financial sanctions and summary remedies [6] which the Court in

---

**6.** In *McKesson, supra,* 496 U.S. at ——, 110 S.Ct. at 2251, n. 20, 110 L.Ed.2d at 36–37, the Court recited the following sanctions and summary remedies in Florida:

"If a distributor fails to pay the tax on time, the Division of Alcoholic Beverages and Tobacco may issue a warrant which, when filed in a local circuit court, directs the county

*McKesson* held did not provide taxpayers with a meaningful opportunity to withhold payment and to obtain a predeprivation determination of the validity of a tax. Those provisions were deemed insufficient in *McKesson*, and the similar North Dakota provisions do not, as a matter of federal constitutional law, provide North Dakota taxpayers with a meaningful opportunity to withhold payment and obtain a predeprivation determination of the validity of this discriminatory tax.

Moreover, *Clairmont* did not involve a determination that a taxing scheme violated the federal constitution. In *Clairmont* we construed a statutory exemption to the special fuels tax and held that the Legislature intended to exempt certain special fuels from taxation. In *Clairmont, supra,* 261 N.W.2d at 786, we also considered a refund issue and recognized that it was "anomalous, if not inequitable, that a State which makes laws requiring other persons to return ill-gotten gains may itself retain property it has received but to which it was not entitled." However, we held that the taxpayer was not entitled to a refund because it had not protested the assessment prior to bringing an action for a refund and that the mere presence of a statutory scheme imposing penalties, fines, and loss of license for failure to pay taxes did not constitute duress. *Clairmont* is not controlling because *McKesson* held that, as a matter of federal constitutional law, similar Florida laws failed to provide taxpayers with a meaningful opportunity to withhold payment and obtain a predeprivation determination of the tax assessment's validity. *See Beam, supra,* —— U.S. at ——, 111 S.Ct. at 2443, 115 L.Ed.2d at 487–88 ("Subject to possible constitutional thresholds ... the remedial inquiry is one governed by state law, at least where the case originates in state court.").

In *McKesson* the Court also considered equitable arguments raised by Florida and suggested that a state may protect its interest in sound fiscal planning by limiting refunds to those taxpayers paying under protest or providing some other timely notice of complaint; by establishing relatively short statutes of limitation for such actions; by refraining from collecting taxes pursuant to a scheme that has been declared invalid by a court pending further review on appeal; by placing challenged tax payments in escrow; or by providing refunds on a reasonable installment basis.

In this case the State does not assert that it implemented any of those procedures for the refunds at issue.[7] As in *McKesson* the State's failure to avail itself of any methods of self-protection weakens any equitable justification under state law for avoiding its federal constitutional obligation to provide meaningful relief. The State's equitable arguments are further diminished because *New Energy* did not establish a new legal principle and instead involved a well-established Commerce Clause principle which was clearly foreshadowed. The State therefore cannot rely upon the presumption of the statute's constitutionality. *Compare Metropolitan Life Insurance Co. v. Commissioner of Department of Insurance,* 373 N.W.2d 399 (N.D.1985) [decision that gross insurance premium tax violates equal protection overruled prior caselaw and was equivalent of a new principle of law justifying purely prospective relief]. Moreover, contrary to the State's argument that the Legislature promptly revised the discriminatory tax immediately after *New Energy* was decided, we are not persuaded that the Legislature's action in 1989 is entitled to favorable equitable consideration for the time period involved in this case. We conclude that, as a matter of federal constitutional law, Service Oil's payment of the discriminatory

---

sheriff to levy upon and sell the delinquent taxpayer's goods and chattels to recover the amount of the unpaid tax plus a penalty of 50%, along with interest of 1% per month and the costs of executing the warrant. Fla.Stat. § 210.14(1) (1985). In addition, the Division may revoke, § 561.29(1)(a), or decline to renew, § 561.24(5), a distributor's license for failure to abide by Florida law, including the statutory requirement that the liquor tax be timely paid."

7. Section 57–43.1–42.2, N.D.C.C., enacted effective May 31, 1988, limits claims for refunds of motor vehicle fuel taxes to those taxes timely paid under protest.

taxes was not voluntary, and the district court did not err in ordering the same relief ordered in *McKesson*.

### III. ATTORNEYS' FEES

■ The State argues that the district court erred in awarding Service Oil attorneys' fees and costs under Section 28–32–21.1, N.D.C.C., which provided [8]:

"*Actions against administrative agencies—Attorneys' fees and costs.*

"1. In any civil judicial proceeding involving as adverse parties an administrative agency and a party not an administrative agency or agent of an administrative agency, the court must award the party not an administrative agency reasonable attorneys' fees and costs if the court finds in favor of that party and determines that the administrative agency acted without substantial justification.

"2. This section applies to an administrative or judicial proceeding brought by a person against an administrative agency for judicial review of a final order or decision, or the legality of a rule adopted pursuant to this chapter.

"3. Any attorneys' fees and costs awarded pursuant to this section must be paid from funds available to the administrative agency the final order, decision, or rule of which was reviewed

by the court. The court may withhold all or part of the attorneys' fees from any award if the court finds the administrative agency's action was substantially justified or that special circumstances exist which make the award of all or a portion of the attorneys' fees unjust."

The State argues that Section 28–32–21.1, N.D.C.C., applies only when there is a civil judicial proceeding to review a final order or decision of an administrative agency [9] made pursuant to Ch. 28–32, N.D.C.C. The State asserts that Section 28–32–21.1, N.D.C.C., is not applicable to this case because Service Oil's request for a refund was made pursuant to Section 32–12–03, N.D.C.C.,[10] and there was no final order or decision of an administrative agency made under Ch. 28–32, N.D.C.C. Service Oil responds that its claim for a refund under Section 32–12–03, N.D.C.C., met the statutory requirements of Section 28–32–21.1, N.D.C.C.

We need not decide the specific circumstances under which Section 28–32–21.1, N.D.C.C., is applicable [11] because, assuming that statute is applicable to Service Oil's claim, the district court erred in determining that the State acted without substantial justification.

8. Section 28–32–21.1(2) and (3), N.D.C.C., were amended, effective July 1, 1991, and now provide:

"*Actions against administrative agencies—Attorneys' fees and costs.*

\* \* \* \* \* \*

"2. This section applies to an administrative or civil judicial proceeding brought by a party not an administrative agency against an administrative agency for judicial review of a final agency order, or for judicial review pursuant to this chapter of the legality of agency rulemaking action or a rule adopted by an agency as a result of the rulemaking action being appealed.

"3. Any attorneys' fees and costs awarded pursuant to this section must be paid from funds available to the administrative agency the final order, rulemaking action, or rule of which was reviewed by the court. The court may withhold all or part of the attorneys' fees from any award if the court finds the administrative agency's action was substantially justified or that special circumstances exist

which make the award of all or a portion of the attorneys' fees unjust."

9. We note that Section 28–32–01(1), N.D.C.C., defines an "administrative agency" for purposes of Ch. 28–32, N.D.C.C.

10. Section 32–12–03, N.D.C.C., provides:

"*Claim presented and refused before action brought.* No action upon a claim arising upon contract for the recovery of money only can be maintained against the state until the claim has been presented to the department, institution, agency, board, or commission to which claim relates for allowance and allowance thereof refused. The neglect or refusal of the office to act on such claim for a period of ten days after its presentation for allowance must be deemed a refusal to allow the claim."

11. We observe that the Legislature may want to further consider and define the specific circumstances under which that statute is applicable.

In *Aggie Investments GP v. Public Service Commission*, 470 N.W.2d 805, 814 (N.D.1991), we adopted the following interpretation of "substantial justification" from *Pierce v. Underwood*, 487 U.S. 552, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988):

"[T]o mean ' "justified in substance or in the main"—that is, justified to a degree that could satisfy a reasonable person.' The court observed that 'a position can be justified even though it is not correct, and we believe it can be substantially (*i.e.*, for the most part) justified if a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact.' ... Substantial justification thus represents a middle ground between an automatic award of attorney's fees to a prevailing party and an award of attorney's fees for frivolous claims.... Merely because an agency's actions are not upheld by a court does not mean that the agency's action was not substantially justified."

In *Aggie* we concluded that the abuse of discretion standard applied to review of awards of attorneys' fees under Section 28–32–21.1, N.D.C.C.

This case involves complicated issues about whether or not a judicial decision declaring a state taxing scheme unconstitutional applies retroactively and, if so, the appropriate relief. Although we have not upheld the State's position on the merits of those issues, our decision does not mean that the State acted without substantial justification. *Aggie, supra.*

The Supreme Court's decisions in *ATA* and *Beam* were sharply divided and the separate opinions in those cases demonstrate that the threshold issue of retroactivity of a judicial decision involves complex constitutional issues. There is some language in those opinions which suggests that the scope of relief is not a settled question of law. The State took the position that it was substantially justified in not granting Service Oil a refund because Service Oil had adequate predeprivation remedies and voluntarily paid the taxes under *Clairmont.* That there was some basis for this position is evidenced by the parties' stipulation to postpone further proceedings pending the outcome of *ATA* and *McKesson*, litigating like questions.

Although *McKesson* sets the minimum requirements for relief as a matter of federal constitutional law, the unsettled and complex constitutional issues involved in this case establish that the State's position, while not persuasive, was "justified to a degree that could allow a reasonable person" to believe that it had a "reasonable basis in law and fact." *Aggie, supra,* 470 N.W.2d at 814. *See Minot Farmers Elevator v. Conrad*, 386 N.W.2d 463 (N.D.1986) [Tax Commissioner did not act without substantial justification where his interpretation of statute, while not persuasive, was reasonable]. A contrary conclusion would deter administrative agencies from making good faith arguments for creditable extensions and interpretations of the law. We do not believe that Section 28–32–21.1, N.D.C.C., was intended to restrict administrative agencies in that manner.

Because of the complex and complicated nature of the unsettled constitutional issues involved in this case, we believe that the district court abused its discretion in awarding attorneys' fees under Section 28–32–21.1, N.D.C.C. Accordingly, we reverse the judgment awarding Service Oil attorneys' fees.

We affirm the judgment awarding Service Oil retroactive relief and we reverse the judgment awarding Service Oil attorneys' fees.

LEVINE and MESCHKE, JJ., concur.

Justice H.F. GIERKE, a member of the Court when this case was heard, resigned effective November 20, 1991, to accept appointment to the United States Court of Military Appeals and did not participate in this decision.

VANDE WALLE, Justice, concurring.

I concur in the majority opinion. But I write separately to note that I believe the wording of Section 28–32–21.1, NDCC, positively requires that an "administrative agency" must be involved in the judicial proceeding and clearly indicates that it ap-

plies to an administrative or judicial proceeding brought by a person against an administrative agency "for judicial review of a final order or decision, or the legality of a rule adopted pursuant to this chapter." [1] Chapter 28–32, NDCC, is the chapter governing administrative agencies and the term "administrative agency" is defined therein. Section 28–32–01(1).

The State of North Dakota is not an administrative agency within the meaning of that definition. Furthermore, the action was not brought as a result of any action by an administrative agency; rather the action was instituted as a declaratory judgment action to declare unconstitutional Section 57–43.1–02(3), NDCC. It is not within the province of an administrative agency to declare unconstitutional a statute enacted by the Legislature. *Johnson v. Elkin*, 263 N.W.2d 123 (N.D.1978).

Section 57–43.1–32, NDCC, provides for the refunds of "erroneously or illegally" taxes imposed by Chapter 57–43.1, NDCC, through the office of management and budget, but refunds are to be paid only from "undistributed funds received from the tax imposed by this chapter." Significantly, the definition of "administrative agency" contained in Section 28–32–01(1), NDCC, specifically excludes the office of management and budget except with regard to certain functions not pertinent to the refund of the gasoline taxes collected under Chapter 57–43.1. Thus, the office of management and budget was not functioning as an administrative agency within the meaning of Chapter 28–32 when it denied Service Oil's claim for a refund. *C.f. Ardestani v. Immigration and Naturalization Service*, — U.S. —, 112 S.Ct. 515, 116 L.Ed.2d 496 (1991).

I believe the purpose of Section 28–32–21.1, NDCC, was to require an administrative agency, as defined in Chapter 28–32, to pay attorney fees when it acted without substantial justification in administering the duties delegated to it by the Legislature. Although the award of attorney fees obviously benefits the adverse party, the Legislature structured the statute so that it also serves to penalize the agency for its wrong action in administering the statutes in that the attorney fees and costs "must be paid from funds available to this administrative agency". That language, found in subsection 3 of the section, further indicates that the attorney fees are only to be awarded when the action involves "the final order, decision, or rule of [the agency] was reviewed by the court". Thus, before there can be an award of attorney fees there must be some administrative action under Chapter 28–32.

But, for purposes of discussion only, if I were to conclude that administrative-agency action was not the keystone to the award, it is nevertheless evident that an administrative agency, as opposed to the State itself, must be involved in the action. To conclude otherwise is to construe the statute to authorize the State to pay attorney fees whenever it does not prevail in a judicial proceeding. I do not advocate that a prevailing party, as a matter of equity or justice, is not entitled to those fees, only that a determination to pay those fees is for the Legislature. It is particularly doubtful to me that the Legislature intended that an administrative agency should suffer a reduction in its budget because of an unconstitutional statute enacted by the Legislature merely because the agency is delegated to administer its provisions. If the Legislature intended that result, it must tell me so specifically.

I agree heartily with footnote 11 in the majority opinion which suggests that the Legislature further consider and define the circumstances under which Section 28–32–21.1, NDCC, will apply.

---

**1.** Subsection 3 of Section 28–32–21.1 should remove any question as to the meaning of the Section when it clearly provides that the attorney fees and costs awarded pursuant to Section

28–32–21.1 "must be paid from funds available to the administrative agency *the final order, decision or rule of which was reviewed by the court.*" (emphasis supplied)